*1998 ND 87*

**MYERS–WEIGEL FUNERAL HOME d/b/a WBM Inc., Petitioner and Appellant,**

v.

**JOB INSURANCE DIVISION OF JOB SERVICE NORTH DAKOTA, Respondent and Appellee.**

**Civil No. 970331.**

Supreme Court of North Dakota.

April 28, 1998.

Todd D. Kranda, Kelsch, Kelsch, Ruff & Kranda, Collins and Main, Mandan, for petitioner and appellant.

Douglas A. Bahr, Assistant Attorney General, Bismarck, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Myers–Weigel Funeral Home appealed from the Judgment of the Emmons County District Court affirming the administrative decision of Job Service North Dakota that substitute funeral directors are employees under section 52–01–01, N.D.C.C. We affirm.

I

[¶ 2] Myers–Weigel Funeral Home owns and operates a funeral home business in Linton, North Dakota. Richard Myers is the president of WBM, Inc. Myers is also a licensed funeral service practitioner in North Dakota and provides services to Myers–Weigel.

[¶ 3] During 1995, Myers–Weigel obtained funeral-directing services from two outside funeral directors. These substitute funeral directors were paid per diem plus round trip mileage. The per diem was a set amount paid whether or not the substitute was required to embalm any bodies or perform any funeral services. Myers–Weigel supplied the necessary equipment and inventory. The substitute, however, could use his own equipment.

[¶ 4] Myers hired either L.W. Logan or Perry Hoven to replace him while he was away on business or vacation. Logan and Hoven directed the activities of Myers–Weigel employees and stayed in Myers's home when they were there.

[¶ 5] North Dakota requires funeral homes and practitioners to be licensed. Myers–Weigel is a licensed funeral home. Logan and Hoven are also each individually licensed funeral service practitioners in North Dakota.

[¶ 6] Hoven owns and operates his own funeral home business in Ellendale, North Dakota. Logan is licensed in North and South Dakota. For over a decade, Logan has traveled throughout the two states providing substitute funeral services in various funeral home facilities. Logan advertises his substitute services in *The Servitor,* a monthly newsletter published by the North Dakota Funeral Director's Association.

[¶ 7] After an employment audit, Job Service took the position that the substitute funeral directors were employees of Myers–Weigel. After a hearing and administrative review the determination was affirmed. *See* N.D.C.C. § 52–04–17; N.D. Admin. C. § 27–02–15–01 (providing for administrative determinations of coverage and an appeals process). Myers–Weigel appealed. The district court affirmed the determination.

II

[¶ 8] On appeal to the Supreme Court, Myers–Weigel argues the administrative determination was in error because the substitute funeral directors are not employees under the statutorily prescribed "common law" test. *See* N.D.C.C. § 52–01–01(17)(e). Although we respect the district court's decision, *Volesky v. North Dakota Game and Fish Dept.,* 1997 ND 140, ¶ 6, 566 N.W.2d 812, our review centers on the administrative determination. *Wahl v. Morton County Social Servs.,* 1998 ND 48, ¶ 4, 574 N.W.2d 859. Section 28–32–21, N.D.C.C., allows for an appeal to this Court. Section 28–32–19, N.D.C.C., requires an agency order be affirmed unless error of a specifically listed type is present. In accord with sections 28–32–19 and 28–32–21, N.D.C.C., we consider whether the findings of fact are supported by a preponderance of the evidence, whether the conclusions of law are supported by the findings, and whether the decision follows the law. *Wahl,* 1998 ND 48, ¶ 4, 574 N.W.2d 859. Significantly, the remedial nature of our unemployment compensation law calls for a liberal construction which favors the finding of employee status. *Newland v. Job Service North Dakota,* 460 N.W.2d 118, 121–22 (N.D. 1990) (citing, *inter alia, Smith v. Hoff,* 20

N.D. 419, 127 N.W. 1047 (1910) (remedial statutes must be liberally construed for purposes obviously intended)).

[¶ 9] This case turns on whether substitute funeral directors are employees or independent contractors. The central question in determining whether an individual is an employee or independent contractor is: Who is in control? *BKU Enters., Inc. v. Job Service North Dakota*, 513 N.W.2d 382, 385 (N.D.1994) (stating "[u]nder N.D.A.C. § 27–02–14–01(5)(a), the common law test focuses upon the employer's right to direct and control the means and manner of performing the work"). *See Conference Committee on H.B. 1378*, 52nd N.D. Leg. Sess., (Apr. 6, 1991) (Representative John Dorso comments "[t]he Legislative Council feels the right to control and the common law [test] are one and the same"). The *right* to control is dispositive, whether or not it has been exercised. *Turnbow v. Job Service North Dakota*, 479 N.W.2d 827, 830 (N.D.1992). The North Dakota Administrative Code section 27–02–14–01(5)(b), includes twenty factors to consider in determining whether or not sufficient control is present to establish if an individual is an employee or independent contractor. *See BKU Enters.*, 513 N.W.2d at 385–87 fn. 2 (quoting, in full, the list of twenty factors identified in section 27–02–14–01(5)(b), N.D. Admin. C.). These twenty factors measure the employer's right to control the purported employee. *Id.* at 385.

[¶ 10] Myers–Weigel argues the twenty factors weigh in favor of an independent-contractor relationship. Myers–Weigel makes a seemingly persuasive argument in favor of an independent-contractor relationship by identifying the actual circumstances in which the substitute funeral directors work. However, once we separate, which we must under the rule, the control exercised from the right to control, we agree with the Job Service determination: "[A]lthough [Myers–Weigel] exercises little direction or control over the substitutes, it is clear that [Myers–Weigel] has the legal right to do so and that the service performed by the substitutes is, therefore, employment."

[¶ 11] In its determination, Job Service structured its findings of fact in consideration of the twenty factors in section 27–02–14–01(5)(b), N.D. Admin. C.:

"The services performed are an integral part of the normal business operations of [Myers–Weigel]. The services must be personally rendered, and the hours are established by [Myers–Weigel]. The work is performed on [Myers–Weigel's] premises in accordance with industry standards. Furthermore, the substitutes perform the identical services as [Richard Myers], who is an employee of the corporation. The substitutes are reimbursed for their travel to [Myers–Weigel's] premises, and the [Myers–Weigel] furnishes all the necessary equipment and materials. That the substitutes have some personal tools unique to their trade is not unusual to skilled workers. The substitutes have no significant investment in the facilities and have little risk of economic loss."

Job Service concluded these facts indicated Myers–Weigel had the right to control the substitute funeral directors. Considering the evidence, that is a reasonable conclusion. *BKU Enters.*, 513 N.W.2d at 388 (affirming the agency determination because "[a] reasoning mind reasonably could have found the greater weight of the evidence supported that finding").

### III

[¶ 12] We conclude the findings made by Job Service are supported by a preponderance of the evidence, Job Service's legal conclusions are supported by the findings of fact, and the decision follows the law. The Judgment is affirmed.

[¶ 13] MESCHKE, MARING, NEUMANN and SANDSTROM, JJ., concur.