2001 ND 152

**Renae DOAN and Jerry DOAN, Individually and as parents and next friends of Jayce Doan, a minor child, Plaintiffs and Appellants,**

v.

**CITY OF BISMARCK, Damian Dionne, Defendants and Appellees.**

**Kevin Blake and Jan Gustin, Defendants.**

**No. 20010042.**

Supreme Court of North Dakota.

Aug. 29, 2001.

Calvin N. Rolfson (argued) and Brian L. Bergeson (appeared), Rolfson Schulz Lervick & Geiermann Law Offices, P.C., Bismarck, ND, for plaintiffs and appellants.

Randall J. Bakke (argued) and Michael J. Hagburg (on brief), Smith Bakke Hovland & Oppegard, Bismarck, ND, for defendant and appellee City of Bismarck.

Curtis L. Wike (argued) and Julie M. Buechler (on brief), Fleck, Mather & Strutz, Bismarck, ND, for defendant and appellee Damian Dionne.

KAPSNER, Justice.

[¶ 1] Renae and Jerry Doan, individually and as parents of Jayce Doan, (collectively, the "Doans") appeal from the district court's grant of summary judgment in favor of the City of Bismarck ("City") and Damian Dionne. Because genuine issues of material fact exist which preclude an award of summary judgment, we reverse and remand.

I

[¶ 2] On February 12, 1995, the Doans and their three children, Shanda, Jay, and Jayce, attended the Agri International Stock Show ("Agri Show") at the Bismarck Civic Center, which is owned and operated by the City. Shanda and Jay participated in the Junior Show and Fitting Contest ("Junior Show"), advertised as part of the Agri Show and open to the public. When Renae and two-year-old Jayce were stand-

ing in a public walkway between the cattle stalls and washbay, visiting with Shanda and Jay, an 850–pound heifer cow "spooked" while Kevin Blake led the heifer from the washbay to its stall with a rope. Blake let go of the rope, believing he could no longer control the animal. The heifer, owned by Dionne, reared up and twice trampled Renae and Jayce who suffered injuries.

[¶ 3] The Doans filed a negligence claim against the City, Dionne, Blake, and Sutton Rodeos, Inc. ("Sutton"), alleging the Agri Show was sponsored by the City and Sutton. The district court dismissed Sutton, based on a stipulation between Sutton and the Doans. The Doans moved to amend their complaint to remove all claims against Sutton and to add Gustin as a party. The district court granted this motion.

[¶ 4] The City moved for summary judgment, asserting (1) the City had no duty of care to the Doans because it did not exercise control over the area where the Doans were injured and because the City delegated its responsibility to an independent contractor, Jan Gustin; (2) the City was not negligent; (3) the Doans assumed the risk of their injuries; and (4) the City was protected by discretionary immunity from any liability to the Doans. Dionne and Blake joined the City's motion for summary judgment, arguing the Doans assumed the risk of their injuries because the heifer presented an open and obvious danger.

[¶ 5] The district court awarded summary judgment in favor of the City and Dionne, but denied summary judgment in favor of Blake. The district court determined the City's actions were not protected by discretionary immunity but, nevertheless, the City did not owe a duty of care to the Doans because it did not control the premises at the time of the injuries and

because the City had delegated any responsibility to an independent contractor, Gustin. The district court also concluded Dionne owed no duty to the Doans; however, genuine issues of material fact existed which precluded summary judgment in favor of Blake.

[¶ 6] Subsequently, the Doans settled their claims against Blake and Gustin, who were then dismissed by the district court. The Doans appeal.

II

[¶ 7] We review this appeal under our standards for summary judgment which promptly resolves a controversy on the merits, without a trial, if the evidence demonstrates no genuine issue exists as to any material fact or inferences to be drawn from undisputed material facts and if the evidence shows a party is entitled to judgment as a matter of law. N.D.R.Civ.P. 56(c); *Fetch v. Quam*, 2001 ND 48, ¶ 8, 623 N.W.2d 357. Issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts. *Fetch*, at ¶ 8. Even undisputed facts do not justify summary judgment if reasonable differences of opinion exist as to the inferences to be drawn from those facts. *Helbling v. Helbling*, 267 N.W.2d 559, 561 (N.D.1978).

[¶ 8] Whether a trial judge properly granted summary judgment is a question of law which we review de novo on the entire record. *Fetch*, 2001 ND 48, ¶ 8, 623 N.W.2d 357. The party seeking summary judgment bears the initial burden of showing there is no genuine dispute regarding a material fact. *Id.* at ¶ 9. We view the evidence in the light most favorable to the party opposing the motion, to whom we give the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Id.* at ¶ 8. The oppos-

ing party may not simply rely on unsupported and conclusory allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial. N.D.R.Civ.P. 56(e); *Fetch,* at ¶ 9.

[¶ 9] We have often held that summary judgment rarely should be granted in negligence cases. *Helbling,* 267 N.W.2d at 561. By their very nature, negligence claims are usually poor subjects for summary judgment. *Latendresse v. Latendresse,* 294 N.W.2d 742, 748 (N.D.1980); *accord McDowell v. Gillie,* 2001 ND 91, ¶ 21, 626 N.W.2d 666 (stating issues involving reasonableness standards generally are inappropriate for disposition by summary judgment).

### III

[¶ 10] The Doans argue the trial court erred in granting summary judgment in favor of the City as to the negligence claim after finding the City owed no duty to the Doans. Rather, the Doans assert the facts and inferences to be drawn raise genuine material issues regarding the City's duty of care based on the City's control of the Agri Show and the Civic Center premises on the date of Doans' injury, as well as the City's control over Gustin's work as the coordinator of the Agri Show. We agree.

### A

[¶ 11] The Doans contend the trial court erred in concluding the City owed them no duty based on the court's ruling the Doans failed to provide credible evidence the City controlled the premises on the date of Doans' injury. The City claimed it turned over control of the Civic Center at the time of the accident to Gustin and the sponsors of the Junior Show.

[¶ 12] To establish an actionable negligence claim, a plaintiff must show a duty exists by the defendant to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty. *Rogstad v. Dakota Gasification Co.,* 2001 ND 54, ¶ 12, 623 N.W.2d 382. Whether a defendant owes a plaintiff a duty is generally a preliminary question of law for the court to decide; however, if the existence of a duty of care depends on resolving factual issues, then the facts must be resolved by the trier of fact. *Pechtl v. Conoco, Inc.,* 1997 ND 161, ¶ 7, 567 N.W.2d 813.

[¶ 13] Under premises liability law, a property owner must have had control over the property where an injury occurred in order to find the owner owed a duty to an injured party. *Stanley v. Turtle Mountain Gas & Oil, Inc.,* 1997 ND 169, ¶ 9, 567 N.W.2d 345. Thus, control is an essential prerequisite for imposition of premises liability. *Id.* at ¶ 10. Landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk. *Sternberger v. City of Williston,* 556 N.W.2d 288, 290 (N.D.1996). The occupier of premises has a right to use the property and to develop it for profit and enjoyment; however, when the occupier conducts dangerous activities or permits dangerous instruments and conditions to exist on premises, the occupier must take reasonable measures to prevent injury to those whose presence on the property reasonably can be foreseen. *O'Leary v. Coenen,* 251 N.W.2d 746, 752 (N.D.1977).

[¶ 14] There is evidence in the record that the City owns the Civic Center and does business in the name of the Civic Center. Richard Petersen, who was the marketing director for the Civic Center on

the date of the accident and who later became general manager of the Civic Center, testified the Civic Center building was designed in part to facilitate the showing of livestock. Petersen indicated the Agri Show was "owned by and managed by" the Civic Center and the City in 1995, the City applied for a trademark for the name of the Agri Show, and the general manager of the Civic Center determined which animals were allowed into the Civic Center. Paul Johnson was manager of the Civic Center at the time of the accident, and the general manager has duties of overseeing the operations of the Civic Center and daily operation of the building. The record includes evidence the City received both rent and revenue from the Agri Show receipts.

[¶ 15] Advertising for the Agri Show included the Junior Show as an event running concurrently with the Agri Show. Income and expense sheets for the Agri Show included items for the Junior Show, and Gustin acknowledged the Junior Show was part of the Agri Show. The judges for the Junior Show were paid staff of the Agri Show. Although the Doans' injuries occurred after the conclusion of the Junior Show, the heifer cow that trampled the Doans was not part of the Junior Show but part of the Agri Show.

[¶ 16] Viewing the evidence in favor of the Doans, there are triable issues of fact concerning the City's control of the Civic Center, Agri Show, and Junior Show. *See Stanley*, 1997 ND 169, ¶ 10, 567 N.W.2d 345 (discussing the centrality of "control" of the property in our premises liability law). From these unresolved factual questions, reasonable persons could draw different inferences and conclusions about whether the City owed the Doans a duty of reasonable care under the circumstances. *See McDowell v. Gillie*, 2001 ND 91, ¶ 25, 626 N.W.2d 666 (reversing a summary

judgment because a reasonable person could draw more than one conclusion from the evidence in the record). We conclude the trial court erred in granting summary judgment in favor of the City after finding the City did not control the premises and did not owe Doans a duty. There are genuine issues of material fact regarding these issues.

B

[¶ 17] The Doans contend the district court erred in concluding the City owed them no duty of care based on the court's finding that the City hired Gustin as an independent contractor to coordinate the Agri Show where the Doans were injured. The Doans insist there are relevant unresolved facts regarding whether Gustin was an independent contractor, whether the City retained control over Gustin's work and the Agri Show, and whether the City could delegate to Gustin the City's duty to maintain the Civic Center in a reasonably safe condition.

1

[¶ 18] The Doans claim the City clearly retained significant control over Gustin, so Gustin in fact was not an independent contractor. Alternatively, even if Gustin was an independent contractor, the Doans claim the City remained liable for the Doans' injuries by controlling Gustin's actions.

[¶ 19] The key question in determining if an individual is an independent contractor or an employee focuses on who is in control. *Myers–Weigel Funeral Home v. Job Ins. Div. of Job Serv. N.D.*, 1998 ND 87, ¶ 9, 578 N.W.2d 125. The employer's right to direct or control the means and manner of performing the work is dispositive regarding the employee or independent contractor classification, whether or not the right has been exer-

cised. *Id.* Under the doctrine of respondeat superior, if an individual is not an independent contractor, agency principles provide that the employer is vicariously liable to third persons for the negligence of the employer's agent in the transaction of the business of the agency. N.D.C.C. § 3–03–09; *Zimprich v. Broekel,* 519 N.W.2d 588, 590 (N.D.1994). The underlying rationale for this doctrine is predicated on the employer's right to control the employee's conduct. *Zimprich,* at 591. The question of agency is a fact question for the trier of fact. *Gessner v. City of Minot,* 1998 ND 157, ¶ 12, 583 N.W.2d 90.

[¶ 20] Generally, an employer is not liable for the negligence of its independent contractor, unless the employer retains control over the independent contractor's work. *Rogstad v. Dakota Gasification Co.,* 2001 ND 54, ¶ 14, 623 N.W.2d 382. This doctrine of retained control does not impose vicarious liability on an employer of an independent contractor, but creates an independent basis of liability for the employer's failure to exercise retained control with reasonable care. *Id.* at ¶ 16. Thus, employers who entrust work to an independent contractor are subject to liability for harm to others for whom the employer owes a duty to exercise reasonable care, if the employer "retains ... control of any part of the work" and causes harm by failing to exercise such control with reasonable care. *Id.* at ¶ 14 (quoting *Restatement (Second) of Torts* § 414 (1965)). The degree of retained control necessary to impose a duty on the employer arises only when the employer retains the right to control the method, manner, and operative detail of the work. *Rogstad,* at ¶ 15. We have explained:

It is not enough that [the employer] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which nee˙ not necessarily be followed, or to pre˙cribe alterations and deviations.... There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in [the contractor's] own way.

*Id.* (quoting *Restatement (Second) of Torts* § 414 cmt. c (1965)). The duty created by § 414 may arise either by an express provision in a contract, retaining for the employer a right to control operative details of the independent contractor's work, or by the employer's actual exercise of retained control of the work. *Rogstad,* at ¶ 16. In *Rogstad,* we concluded an employer that hired an independent contractor did not owe a duty to provide for the safety of the contractor's employee because a contract expressly provided the independent contractor retained complete control over its employees and was solely responsible for all means, methods, techniques, sequences, and portions of the work. 623 N.W.2d 382, 2001 ND 54, at ¶¶ 21, 24. We stated such an unambiguous contract is particularly amenable to summary judgment. *Id.* at ¶ 20. We further concluded the employer did not retain actual control over the scope of work performed by the employee of the independent contractor, even if the employer informed the employee what work to do and periodically checked on the progress of that work. *Id.* at ¶¶ 25–26; *see also Pechtl v. Conoco, Inc.,* 1997 ND 161, ¶¶ 12, 15, 19, 567 N.W.2d 813 (concluding an employer of an independent contractor did not owe a duty to the contractor's employee to maintain a safe workplace, because a contract expressly gave the contractor control over the method, manner, and operative details of the work and the employer did not actually direct the contractor or its employee to begin work under adverse conditions which caused the employee's in-

jury); *Kristianson v. Flying J Oil & Gas, Inc.*, 553 N.W.2d 186, 189 (N.D.1996) (determining an owner did not retain control of an independent contractor's work and did not owe duty of care to injured contractor's employee as the owner had "no role" in selecting safety equipment).

[¶ 21] Our review of the record in the light most favorable to the Doans indicates the City hired Gustin to manage and coordinate the Agri Show, but the City had no written contract with Gustin. Gustin testified she thought she should have a signed contract, but she "couldn't find any record of one" and could not remember signing a contract. When questioned whether there were any written responsibilities set out for her, Gustin replied: "I don't believe so. I think everything was handled in-in meetings and discussions." After Gustin listed her duties, she stated she did not actually handle fee payments, "but request[ed] payment from the Civic Center." Gustin further testified she "work[ed] with the Civic Center staff within the building for the capabilities of the building and the staff." When questioned about the difference between her responsibilities and those of the Civic Center, Gustin reported: "I guess we worked so close together that any questions I had on the facility I went to the building, and it was usually their event coordinator or one of the gentlemen on maintenance. It was basically whoever was on staff." When asked if she reported to a supervisor on the Civic Center staff, Gustin stated: "Obviously the manager of the building.... Obviously I would take my direction from Dick Petersen." Gustin acknowledged, "I ultimately worked with Dick [Petersen]." She testified Dick Petersen or Paul Johnson "definitely" gave her direction. The record includes status reports from Gustin to Johnson and Petersen. Furthermore, Gustin's testimony indicated she could not decide some things on her own, such as major changes or

financial decisions, which Gustin worked on together with the City; and she asserted: "It really [was] a team effort." Gustin acknowledged receiving a 1099 form from the City for her services, and she said the Civic Center, not Gustin, was responsible for hiring and paying bills for the Agri Show.

[¶ 22] We conclude a reasonable person could draw more than one conclusion from the evidence regarding the City's control of the method, manner, and operative details of Gustin's work. There is no unambiguous contract relinquishing the City's control over the Agri Show to Gustin. *See Rogstad*, 2001 ND 54, ¶ 20, 623 N.W.2d 382 (stating an unambiguous contract is amenable to summary judgment). The record reflects the existence of genuine issues of material fact regarding whether Gustin was an independent contractor or whether the City's retained control imposed a duty of care to the Doans. *See Schultze v. Cont'l Ins. Co.*, 2000 ND 209, ¶ 6, 619 N.W.2d 510 (indicating summary judgment is improper if there are relevant, unresolved factual issues). In light of this conflicting evidence, we conclude the district court's grant of summary judgment was improper.

2

[¶ 23] The Doans also argue the City could not delegate to Gustin the oversight of the Agri Show because the City had a nondelegable duty to maintain the Civic Center in a reasonably safe condition when inviting the public into the Civic Center premises. Because we have determined there are numerous factual questions which could potentially result in either direct or vicarious liability for the City on the Doans' claims, we need not reach the question of the City's nondelegable duty. *See Moszer v. Witt*, 2001 ND 30, ¶ 20, 622 N.W.2d 223 (stating an appellate court need not address questions the answers to

which are unnecessary to the determination of an appeal).

## IV

[¶ 24] The Doans also assert that the district court erred in granting summary judgment in favor of Dionne, after finding Dionne owed no duty to the Doans. We agree with the Doans.

[¶ 25] Generally, whether a defendant owes a plaintiff a duty of care is a preliminary question of law for the court to determine, but if the existence of a duty depends on resolving factual issues, the trier of fact must ascertain the facts. *Pechtl v. Conoco, Inc.*, 1997 ND 161, ¶ 7, 567 N.W.2d 813. In general negligence actions, an actor's duty is to exercise reasonable care under the circumstances. *Johansen v. Anderson*, 555 N.W.2d 588, 594 (N.D.1996). The owner of any property must use it with an ordinary degree of care so as not to damage others, exercising caution and reasonable care under the circumstances. *Stoeber v. Minneapolis, St. P. & S.S.M. Ry. Co.*, 40 N.D. 121, 127, 168 N.W. 562, 564 (1918); *see also Peterson v. Conlan*, 18 N.D. 205, 213, 119 N.W. 367, 370 (1909) (imposing on owners of a bull the common-law duty of exercising due care to protect others, not only from known viciousness, but from the mischievous acts of such animal, which might reasonably be expected from the natural disposition and propensities of animals of this class).

[¶ 26] Reasonable care under the circumstances necessarily includes any specialized knowledge, facts, or skill possessed by the one charged with a duty. *Tom Beuchler Constr., Inc. v. City of Williston*, 392 N.W.2d 403, 405 (N.D.1986). In negligence actions, customs or practices do not necessarily establish the standard of care, but may be evidence of whether conduct meets the general standard of reasonable care under the circumstances. *Id.* The ultimate question of whether the actor's conduct was reasonable is for the fact finder to determine. *Johansen*, 555 N.W.2d at 594. Moreover, there is a triable issue of fact if different inferences can be drawn from the evidentiary facts permitting the fact finder to conclude the actor's conduct was not reasonable. *Id.* Generally, summary judgment is inappropriate for resolving issues involving reasonableness standards. *McDowell v. Gillie*, 2001 ND 91, ¶ 21, 626 N.W.2d 666; *see also Latendresse v. Latendresse*, 294 N.W.2d 742, 748 (N.D.1980) (stating negligence claims, by their very nature, are poor subjects for summary judgment, as well as issues involving reasonableness standards, assumption of risk, and related matters).

[¶ 27] An employer is liable for harm to those whom the employer owes a duty to exercise reasonable care, when the harm is caused by an independent contractor hired by that employer, if the employer has retained control of any part of the contractor's work and caused the harm by failing to exercise such control with reasonable care. *Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 14, 623 N.W.2d 382 (citing the *Restatement (Second) of Torts* § 414 (1965)). Furthermore, if special precautions are not taken, one who employs an independent contractor to do work likely to create a peculiar unreasonable risk of physical harm to others is liable for such harm, unless a contract provides the contractor shall take such precautions or unless the employer exercises reasonable care to provide in some manner for the taking of such precautions. *McLean v. Kirby Co.*, 490 N.W.2d 229, 240 (N.D.1992) (citing *Restatement (Second) of Torts* § 413 (1965)).

[¶ 28]   The Doans submitted by affidavit their testimony regarding Dionne's training of the heifer before bringing the animal to the Agri Show. Jerry Doan is a member of the Stockmen's Association, the sponsor of the Junior Show, and Renae Doan is a member of the North Dakota Cattlewomen and District Five Cattlewomen. The Doans run cattle on their ranch and both actively participate in the family ranching operation.   Renae Doan testified: "Animals that are in stock shows are supposed to be trained . . . to be shown and that's one part of training them, is getting them used to being around people and in other environments."   Shanda Doan and Dionne, both of whom train and show cattle, each testified they train cattle prior to cattle shows.   Shanda testified she typically trains cattle "[p]robably four to five months" before showing the animals at events.   In response to inquiry about how much training the heifer who trampled the Doans was given, Dionne responded: "I guess I couldn't tell exactly when we started breaking her, but we generally work with these animals from four to six weeks ahead."   Dionne alleged he hired Blake as an independent contractor to transport, groom, show, and take care of the heifer during the Agri Show.   According to Dionne, the details, method, and manner of Blake's work were left to Blake, who "assumed total control and sole responsibility for the heifer."   However, Dionne's allegations do not include hiring Blake to train the heifer, nor does Dionne argue Blake controlled the heifer's training.   Jerry Doan testified Dionne's description of his training of the heifer "was very brief and his preparation of the animal must not have been proper or sufficient, because the animal became wild for no apparent reason and seriously injured my wife and young boy."

[¶ 29]   This conflicting testimony raises factual disputes as to the standard of reasonable care for showing cattle, including customs and practices involved in properly training cattle for exhibition in public places.   Questions also remain concerning whether Dionne took precautions to prevent unreasonable risk of physical harm to others from his heifer.   Viewed in the light most favorable to the Doans, we conclude the evidence raises genuine issues of material fact, and inferences to be drawn from such unresolved facts, regarding Dionne's duty to exercise reasonable care under the circumstances and whether Dionne breached this duty.

V

[¶ 30]   Numerous material issues of fact remain concerning the City's control of the Agri Show and Dionne's duty to exercise reasonable care.   Summary judgment for the City and Dionne is reversed, and this case is remanded for further proceedings.

[¶ 31] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, JJ., WILLIAM F. HODNY, S.J., concur.

[¶ 32] The Honorable WILLIAM F. HODNY, S.J., sitting in place of MARING, J., disqualified.