# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1461

_____

Oil & Gas Transfer L.L.C.

*Plaintiff - Appellant*

v.

John Karr

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: March 13, 2019
Filed: July 9, 2019

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

John Karr appeals the district court's[1] grant of summary judgment in favor of Oil & Gas Transfer L.L.C. ("OGT"). We affirm.

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

## I.

OGT is an oil field construction company that hired Karr to manage and expand its business in North Dakota. When Karr left OGT in April 2015, he claimed that OGT owed him $1,304,026.42, which OGT disputed. Karr filed a pipeline construction lien statement under North Dakota Century Code section 35-24-04, purporting to establish a lien on a pipeline construction project that he had managed while working for OGT. After filing the lien statement, Karr sued OGT in North Dakota federal court, alleging breach of contract, fraud, promissory estoppel, reformation, and unjust enrichment.

OGT filed this action in January 2016 in North Dakota state court, seeking to quiet the pipeline title based on Karr's ineligibility to claim a lien under section 35-24-04. OGT also sought a declaratory judgment, claiming that, as an employee, Karr was not entitled to a lien. Karr removed the action to federal court on the basis of diversity jurisdiction. In federal court, OGT moved for summary judgment, arguing that the undisputed facts establish that Karr was an employee and that section 35-24-04 does not confer lien rights to employees. The district court agreed and granted OGT's motion. Karr appeals.

## II.

We review *de novo* the district court's order granting summary judgment in favor of OGT. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 852 (8th Cir. 2012). We agree with the district court that Karr was an employee and that section 35-24-04 does not confer lien rights upon employees.

## A.

In this diversity action, we apply the substantive law of North Dakota to determine whether Karr was an employee or an independent contractor. *See*

-2-

*Vandewarker v. Cont'l Res., Inc.*, 917 F.3d 626, 629 (8th Cir. 2019). Under North Dakota law, Karr bears the burden of establishing that he was an independent contractor and not an employee. N.D. Cent. Code § 65-01-03(1) ("The person that asserts that an individual is an independent contractor under the common-law test . . . has the burden of proving that fact."). "The central question in determining whether an individual is an employee or independent contractor is: Who is in control?" *BAHA Petroleum Consulting Corp. v. Job Serv. N.D.*, 2015 ND 199, ¶ 12, 868 N.W.2d 356, 360. This is determined by the common-law "right-to-control" test.[2] N.D. Admin. Code §§ 27-02-14-01(5)(a), 92-01-02-49(1)(a). "The *right* to control is dispositive, whether or not it has been exercised." *Myers-Weigel Funeral Home v. Job Ins. Div. of Job Serv. N.D.*, 1998 ND 87, ¶ 9, 578 N.W.2d 125, 127.

To assist in this inquiry, North Dakota administrative agencies adopted twenty factors to consider when determining whether an individual is an employee or an independent contractor. *See* N.D. Admin. Code §§ 27-02-14-01(5)(b)(1)-(20), 92-01-02-49(1)(b)(1)-(20). "The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed." *Id.* § 27–02–14–01(5)(b). But, several factors "must be given more weight in determining whether an employer-employee relationship exists." *Id.* § 92–01–02–49(2). Those factors—restated to indicate an employer-employee relationship—include (a) the company's significant integration of the individual's services into its operations, (b) a continuing relationship between the individual and the company, (c) the individual's lack of investment in business expenses and facilities, (d) the company not sharing its profits or losses with the individual, (e) the individual working exclusively for the company, (f) the individual not making his

---

[2] Karr argues that the district court also should have considered North Dakota's "relative-nature-of-the-work" test. But he did not raise that argument before the district court and therefore may not raise it for the first time as a basis for reversal on appeal. *See Olga Despotis Tr. v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1066 (8th Cir. 2017).

services available to the general public, and (g) the company's right to fire the individual without liability for breaching a contract. N.D. Admin. Code §§ 27-02-14-01(5)(b)(1)-(20), 92-01-02-49(1)(b)(1)-(20). Other relevant factors that need not be given as much weight include (h) the company requiring the individual to comply with its instructions about "when, where, and how . . . to work"; (i) the individual rendering services personally; (j) the company imposing set hours of work; (k) the individual working full-time for the company; (l) the company paying the employee by the hour, week, or month; and (m) the company paying the individual's business and traveling expenses. *Id.*

Karr claims that he was an independent contractor and that the district court incorrectly weighed the factors when determining that he was an employee. First, he alleges that "OGT had neither control over nor the authority to direct [his] work." But his only support for this proposition is a statement in his own affidavit that he "took over all operational duties of the [pipeline] project" and that "[n]o one directed [his] work." The fact that no one directed his work, however, does not establish that OGT did not have the *authority* to do so. *See Myers-Weigel*, 1998 ND 87, ¶ 9, 578 N.W.2d 125. Second, Karr notes that he was entitled to a bonus of 12.5% of OGT's net income on profitable projects, but he also acknowledges that the weekly base salary he received is "similar to what is commonly found in employment relationships." Third, Karr highlights the fact that his contract with OGT was limited to a 12-month term. But the contract was renewable.[3]

---

[3] We reject Karr's other arguments about why the factors weigh in his favor because they either consist of general statements without obvious connection to specific factors or are unsupported by any citation to the record. *See* Fed. R. App. P. 28(8)(A) (stating that the argument section of the appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000).

In response, OGT reiterates arguments that the district court considered when determining that Karr was an employee, including (1) that Karr earned a weekly salary that OGT paid him regardless of the number of hours, amount of work, or number of projects Karr completed; (2) that Karr completed a Form W-4 to indicate his tax withholdings; (3) that OGT withheld and paid employment taxes on Karr's wages and reported his income to him and the IRS on a Form W-2; (4) that OGT offered Karr regular employment benefits (*e.g.*, health insurance, retirement benefits); (5) that Karr worked full-time for OGT and no one else; and (6) that OGT retained the right to direct Karr's work in all respects. OGT also notes that it provided a truck, housing, and communications equipment for Karr. While Karr "disagrees and vigorously disputes" these assertions on appeal, he does not direct us to anything in the record that creates a genuine issue of material fact about them. Thus, Karr has not carried his burden to show that he was an independent contractor, as the factors indicate that he was an employee.

Karr also claims that the district court improperly applied the summary judgment standard. He argues that the district court erred by making "almost no findings of fact" and also by making the incorrect finding of fact that he was an employee of OGT. But federal courts do not make findings of fact at the summary judgment stage. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). And the question of whether Karr was an employee may be resolved on summary judgment. *Kronberg v. Oasis Petroleum N. Am. LLC*, 831 F.3d 1043, 1049 (8th Cir. 2016) (concluding on summary judgment that the appellant was an independent contractor under North Dakota law).

## B.

Having determined that Karr was an employee, we turn to the question of whether section 35-24-04 confers lien rights upon employees. This seems to be a

matter of first impression in North Dakota[4] and requires us to apply North Dakota's rules of statutory interpretation. *See Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). Under North Dakota law, "[t]he primary purpose of statutory interpretation is to determine legislative intent." *Bolinske v. Jaeger*, 2008 ND 180, ¶6, 756 N.W.2d 336, 339 (per curiam). "[T]he Legislature's intent must be sought initially from the statutory language." *Olson v. Job Serv. N. Dakota*, 2013 ND 24, ¶5, 827 N.W.2d 36, 40. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears . . . ." N.D. Cent. Code § 1-02-02. We must also "interpret[] statutes to give meaning and effect to every word, phrase, and sentence," avoid adopting "a construction which would render part of the statute mere surplusage," *Sorenson v. Felton*, 2011 ND 33, ¶ 15, 793 N.W.2d 799, 803, and "presume the Legislature did not intend an absurd or ludicrous result or unjust consequences," *Pub. Serv. Comm'n v. Wimbledon Grain Co.*, 2003 ND 104, ¶21, 663 N.W.2d 186, 193.

Only if a statute's language is ambiguous may we "resort to extrinsic aids to determine the intention of the legislation, including the object sought to be attained, the circumstances under which the legislation was enacted, and the legislative history." *Rasnic v. ConocoPhillips Co.*, 2014 ND 181, ¶14, 854 N.W.2d 659, 662.

---

[4] Only one published North Dakota state court case involves section 35-24-04. *See Rocky Mountain Steel Foundations, Inc. v. Brockett Co.*, LLC, 2018 ND 96, 909 N.W.2d 671. In that case, the North Dakota Supreme Court did not address whether entities other than subcontractors can claim liens on pipeline construction projects. *Id.* But by referencing only original contractors and subcontractors while discussing a separate issue, the court seems to suggest that the statute does not apply more broadly. *See, e.g., id.* at 2018 ND 96, ¶7, 909 N.W.2d 671 ("The plain wording of N.D.C.C. §§ 35-24-04 and -07 protects an owner from liability greater than the original contract unless that owner receives notice of a *subcontractor's lien* and subsequently pays the general contractor rather than the *subcontractor*." (emphasis added)).

If a lien-related statute is ambiguous, we also must construe it liberally in favor of the individual or entity that contributed labor, skill, or materials. *Great Western Bank v. Willmar Poultry Co.*, 2010 ND 50, ¶ 7, 780 N.W.2d 437 ("[O]ur statutory lien laws are remedial and will be liberally construed *to effectuate their purpose of protecting those who contribute labor, skill, or materials.*"). "A statute is ambiguous if it is susceptible to different, rational meanings." *Rasnic,* 2014 ND 181, ¶14, 854 N.W.2d 659.

North Dakota Century Code section 35-24-04 is titled "Subcontractor's lien"[5] and states:

> Any person who shall, under contract, perform any labor or furnish any material or services as a subcontractor under an original contractor or for or to an original contractor or a subcontractor under an original contractor, is entitled to a lien . . . .

Whether the phrase "as a subcontractor" modifies "[a]ny person" is dispositive. If it does, employees cannot claim liens because the statute confers lien rights only to those who perform labor or furnish material or services *as a subcontractor*. The statute does not define "subcontractor," but the parties do not dispute that an employee is not a subcontractor. The dictionary definition of "subcontractor" also supports the conclusion that employees are not subcontractors: "an individual or business firm contracting to perform part or all of another's contract." Merriam-Webster's Collegiate Dictionary 1242 (11th ed. 2005). If "as a subcontractor" is instead only part of the phrase "as a subcontractor under an original contractor," then

---

[5] The seeming significance of this title is undercut by well-settled North Dakota law that a statute's heading is not part of the statute. *See* N.D. Cent. Code § 1-02-12; *Sauby v. City of Fargo*, 2008 N.D. 60, ¶9, 747 N.W.2d 65, 69 ("The legislature has told us that a headnote may not be used to determine legislative intent or the legislative history for any statute." (internal quotation marks omitted)).

"any person"—including an employee like Karr—who performs labor or furnishes material or services "for or to" either an "original contractor" or "a subcontractor under an original contractor" is entitled to a lien. *See* N.D. Cent. Code § 35-24-01 (defining "person" as "an individual, corporation, limited liability company, firm, partnership, or association").

Karr contends that if the legislature intended to limit the statute to subcontractors, the phrases "[a]ny person" and "under contract" would be unnecessary. The statute, he argues, could have been addressed to "any subcontractor who provides labor, material or services. . . ." But in the absence of a statutory definition of "subcontractor," the inclusion of "[a]ny person" and "under contract" can be understood to clarify the types of entities and relationships necessary to perform labor or furnish material or services *as a subcontractor*.

Karr also argues that if "as a subcontractor" modifies "[a]ny person," two of the three categories of subcontractors entitled to liens under section 35-24-04 are indistinguishable. Assuming that "as a subcontractor" does modify "[a]ny person," subcontractors entitled to liens are those who perform labor or furnish material or services (1) "under an original contractor," (2) "for or to an original contractor," or (3) "for or to . . . a subcontractor under an original contractor." Karr argues that (1) and (2) are identical. While the legislature's use of the prepositions "under" and then "for or to" is not a model of clarity, it can be plausibly explained. For example, (1) can be understood to refer to subcontractors working on a project directly whereas (2) can be understood to refer to subcontractors assisting indirectly (*e.g.*, by supplying materials or providing services to or for the original contractor that the original contractor directly applies to the project).

-8-

Adopting Karr's proposed interpretation of section 35-24-04 would lead to absurd results. If "as a subcontractor" does not modify "[a]ny person," then the number of possible lien claimants is immense. Those entitled to liens would include not only subcontractors and employees of subcontractors, but also, as OGT notes, "couriers delivering design documents to work sites, food delivery drivers bringing lunch to contractors or subcontractors, or vendors hired to perform routine maintenance on construction equipment." We must presume that the legislature did not intend the absurd result of conveying the same lien rights to every marginal project contributor as it gave to subcontractors who are responsible for the completion of portions of the original project contract. *See Pub. Serv. Comm'n*, 2003 ND 104, ¶21, 663 N.W.2d 186.

Similarly, the phrase "under contract" becomes meaningless if not understood to refer only to contracts between pipeline construction contractors and subcontractors. If section 35-24-04 conveys lien rights to employees, then "under contract" must also refer to employment contracts. But the extension of "under contract" beyond the contractor/subcontractor context has no apparent limit. And because anyone who contributes in any way to a pipeline project would presumably do so under some sort of contract and not gratuitously, the phrase "under contract" does nothing to narrow the scope of "[a]ny person" unless it is understood to apply only to contracts between construction contractors.

For these reasons, we conclude that section 35-24-04 unambiguously does not confer lien rights to employees. Thus, we need not consider Karr's arguments about similar statutes in other states and how they have been interpreted.

Because the district court correctly determined that Karr was an employee and because North Dakota Century Code section 35-24-04 does not confer lien rights upon employees, we affirm.

_____