2004 ND 128

**Agnes AZURE and Pete Azure, Plaintiffs and Appellants**

v.

**BELCOURT PUBLIC SCHOOL DISTRICT, Defendant and Appellee.**

**No. 20030338.**

Supreme Court of North Dakota.

June 30, 2004.

Timothy Q. Purdon (argued), Thomas A. Dickson, and Justin D. Roness of Dickson & Purdon, Bismarck, N.D., for plaintiffs and appellants.

Jason R. Vendsel (argued) of McGee, Hankla, Backes & Dobrovolny, Minot, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Agnes Azure and Pete Azure ("Azures") appeal from the district court's grant of summary judgment, dismissing their negligence action against the Belcourt Public School District ("School District") for injuries Agnes Azure received while employed at the Turtle Mountain Community Middle School ("Middle School"). Because the Azures failed to raise a genuine issue of material fact precluding summary judgment, we affirm.

## I

[¶ 2] Agnes Azure was employed by the United States Bureau of Indian Affairs ("BIA") as a special education teacher at the Middle School. On March 29, 2000, Agnes Azure was performing lunchroom supervisory duty in the Middle School's cafeteria. A fight began between two students and Agnes Azure intervened, assisted by Tim Johnson, a BIA employee also performing lunchroom supervisory duty. During the altercation, Agnes Azure was injured, suffering a traumatic brain injury that resulted in an inability to return to work.

[¶ 3] The lunchroom is located in a building adjacent to the Middle School. The lunchroom building and the building that houses the Middle School are both BIA-owned buildings. The Middle School is a state-accredited school, operated jointly by the School District and the BIA. The BIA teachers had supervised the lunchroom since 1981 under a BIA team concept plan established through a collective bargaining agreement between the BIA and its employees.

[¶ 4] At the time of the incident, approximately 400 students were enrolled at the Middle School. Approximately 370 of those students were American Indian. The Middle School received funds from the BIA and from the State of North Dakota through the School District, a political subdivision. The BIA provided funds for the American Indian students, and the State provided funds for all of the students. Approximately half of the 60 Middle School teachers were BIA employees and half were School District employees. Louis Dauphinais, the principal of the Middle School, was a BIA employee who exercised control and authority over both BIA and School District employees at the Middle School through an arrangement initially established in 1991 under a cooperative agreement. Initially, the agreement was renewed annually. It had not been formally renewed for three to five years before this incident; however, the relationship between the BIA and the School District as established under the cooperative agreement was allegedly continued by the parties. Principal Dauphinais's immediate supervisor was Dr. Loretta DeLong, a BIA line officer. Dr. Viola LaFountaine, Superintendent of the School District, exercised supervisory powers and responsibilities over School District employees, but had allegedly ceded those powers and responsibilities to Principal Dauphinais under the cooperative agreement. Under that de facto arrangement, Middle School teachers were accountable to Principal Dauphinais regardless of whether they were BIA or School District employees.

[¶ 5] On August 7, 2001, Agnes Azure sued the School District, alleging it had negligently failed to maintain a safe environment for her at the Middle School and, as a result of that negligence, she was injured. Pete Azure sued for loss of consortium. The Azures' actions were contained in the same complaint.

[¶ 6] The School District moved for summary judgment on January 22, 2003, arguing it did not have control over the lunchroom where Agnes Azure was injured and, alternatively, even if the School District had control, it did not breach its duty of care. The district court determined the School District "did not have any ownership, supervision or control of the building or activities at the time of the injury," therefore, it did not owe a duty of care to Agnes Azure, as a matter of law. The district court granted the School District's motion and dismissed the action with prejudice.

[¶ 7] The Azures appeal, arguing the district court erred in granting summary

judgment because the issues of whether the School District exercised control over the Middle School and breached its duty of care are questions of fact for a jury to determine.

## II

[¶ 8] Summary judgment is a procedural device for the prompt and expeditious disposal of an action without a trial if a party is entitled to judgment as a matter of law, and no dispute exists as to the material facts or the reasonable inferences to be drawn from the undisputed facts, or if resolving disputed facts will not change the result. *Groleau v. Bjornson Oil Company,* 2004 ND 55, ¶ 5, 676 N.W.2d 763; N.D.R.Civ.P. 56. The moving party has the burden of showing no genuine issue of material fact exists and they are entitled to judgment as a matter of law. *Groleau,* at ¶ 5. This Court reviews the evidence in a light most favorable to the opposing party and gives that party the benefit of all favorable inferences. *Hurt v. Freeland,* 1999 ND 12, ¶ 7, 589 N.W.2d 551. In *Hurt,* we stated:

In considering a motion for summary judgment, a court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from that evidence to determine whether summary judgment is appropriate. *Matter of Estate of Otto,* 494 N.W.2d 169, 171 (N.D.1992). Although the party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact, the court must also consider the substantive standard of proof at trial when ruling on a summary judgment motion. *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 474–75 (N.D. 1991). The party resisting the motion may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D. 1994). Summary judgment is proper against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Matter of Estate of Stanton,* 472 N.W.2d 741, 746 (N.D.1991).

1999 ND 12, ¶ 8, 589 N.W.2d 551. When no pertinent evidence on an essential element of the claim is presented to the trial court in opposing a motion for summary judgment, it is presumed no such evidence exists. *Koehler v. County of Grand Forks,* 2003 ND 44, ¶ 9, 658 N.W.2d 741. Whether a district court appropriately granted summary judgment is a question of law subject to a *de novo* standard of review on the entire record. *Id.* at ¶ 10.

[¶ 9] Negligence actions involve issues of fact and are generally not appropriate for summary judgment. *Groleau,* 2004 ND 55, ¶ 6, 676 N.W.2d 763; (citing *Iglehart v. Iglehart,* 2003 ND 154, ¶ 11, 670 N.W.2d 343). An actionable negligence "consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of the duty." *Groleau,* at ¶ 6; *Rogstad v. Dakota Gasification Co.,* 2001 ND 54, ¶ 12, 623 N.W.2d 382. To establish an actionable negligence, the plaintiff must show the defendant had a duty to protect the plaintiff from injury. *Groleau,* at ¶ 6; *Rogstad,* at ¶ 12. Generally, the existence of a duty is a preliminary question of law for the court to decide. *Groleau,* at ¶ 6; *Rogstad,* at

¶ 12. When a duty does not exist, there is no negligence. *Rogstad,* at ¶ 12. If determining the existence of a duty depends on resolving factual issues, the facts must be resolved by the trier of fact. *Groleau,* at ¶ 6. However, "[i]ssues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts". *Groleau,* at ¶ 6.

### III

[¶ 10] To prevail on their negligence claim, the Azures must first establish that the School District had a duty to protect Agnes Azure from injury. On appeal, the Azures and the School District both argue this case under the legal theory of premises liability. However, this case was not initially pled under a premises liability theory and premises liability issues are not presented here. The Azures' complaint stated the basis for their negligence claim as "the Belcourt Public School District, through the acts and omissions of its employees acting within the scope of their employment, negligently failed to maintain a safe working environment for Mrs. Azure." The conclusive issue in this case is whether the School District had a duty to provide a safe environment for Agnes Azure. "Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." 57A Am. Jur. 2d. *Negligence* § 89 (1989 & Supp. 2002). The Azures must show the School District had a legal obligation to provide a safe environment for Agnes Azure in the Middle School lunchroom. Whether the relation between two parties is such that it gives rise to a duty is a question of law for the court to decide. *See Groleau,* 2004 ND 55, ¶ 6, 676 N.W.2d 763 (holding that whether a duty exists is generally a question of law).

[¶ 11] The Azures argue the district court erred in granting summary judgment by improperly concluding the School District did not have control over the lunchroom as a matter of law and, therefore, it did not owe Agnes Azure a duty to provide a safe environment. The Azures rely on *Doan v. City of Bismarck,* 2001 ND 152, 632 N.W.2d 815, for the proposition that the question of control is a disputed question of fact inappropriate for summary judgment, and assert our holding in *Doan* controls this case. The essential facts of this case are distinguishable from those in *Doan,* and the Azures reliance on *Doan* is misplaced. *Doan* was a premises liability case in which the Doans sued the City of Bismarck, the owner of the property where the injury occurred, which had allegedly delegated its responsibility to an independent contractor. *Doan,* at ¶¶ 2–5. Because, "under premises liability law, a property owner must have had control over the property where an injury occurred in order to find the owner owed a duty to an injured party," control was an essential prerequisite for determining premises liability. *Doan,* at ¶ 13. Unlike *Doan,* this is not a premises liability action and, here, the Azures have not sued the owner of the premises where the injury occurred. Here, the essential prerequisite is to establish a relationship through supervisory and operational controls that gives rise to the School District's duty to protect Agnes Azure from injury in the Middle School lunchroom. Without establishing supervisory or operational control of the lunchroom, the supervision plan, or of Agnes Azure, there is no relationship between the parties rising to a duty and no liability for negligence.

[¶ 12] The Azures assert the facts and inferences to be drawn raise genuine material issues regarding the School District's control of the lunchroom and its duty of

care in providing a safe working environment. The Azures contend the School District had a duty to provide Agnes Azure with a safe environment because the School District had a non-delegable responsibility to exercise ordinary care to keep the lunchroom in a safe condition for its foreseeable use, and the School District exercised control over the Middle School, the teachers, and the students at the time of the incident. In support, the Azures rely on evidence of certain facts they allege raise a genuine issue of material fact: (1) the School District admitted in its answer that it administers and operates a school at the Middle School; (2) the Middle School was a state-accredited school through the School District; (3) the Middle School received per-pupil state funding; (4) the Middle School's principal acted as the de facto representative of the School District at the Middle School in exercising control over the Middle School teachers, students, and facilities; (5) the School District exercised direct control over the lunchroom through Tim Johnson who, at the time of the incident, it considered a School District agent; and, (6) the remedial measures established after the incident utilize School District employees, which supports the School District was involved with the control over the lunchroom.

[¶ 13] For purposes of summary judgment, we review the evidence in a light most favorable to the Azures. Therefore, without deciding, we will assume the School District, as a state entity receiving state accreditation and funding, maintains control over some operational aspects of the Middle School and we assume, again without deciding, that it fulfills its operational responsibilities through Principal Dauphinais under a de facto arrangement. However, resolution of those factual issues in the Azures' favor does not alter the result. On this record, there is still no evidence presented that establishes the School District's control over some of the Middle School operations included the lunchroom, the lunchroom supervision plan, or BIA employee Agnes Azure.

[¶ 14] Agnes Azure was a BIA employee performing lunchroom supervisory duties established through an agreement between the BIA and its employees. The incident occurred in the Middle School lunchroom located in a BIA-owned building. Since 1981, the BIA maintained exclusive control over the lunchroom supervision plan. There is no evidence to show the School District ever had operational control over the lunchroom supervision plan or that the BIA ever relinquished operational control over the activities and supervision of the lunchroom to the School District. At the time of Agnes Azures' injury, the lunchroom supervision plan was produced and managed exclusively by the BIA, and the supervisory responsibilities were performed exclusively by BIA teachers under the 1981 collective bargaining agreement. There is no evidence showing the School District or School District employees participated in the operational management or control of the lunchroom supervision plan.

[¶ 15] The Azures allege the School District's direct control in the lunchroom was established by the presence and actions of Tim Johnson, a BIA employee whom the School District considered its employee or agent. The Azures rely on the School District's answer to an interrogatory which stated: "Please list ... all employees/agents who were present at the time the [sic] Agnes Azure was injured." The School District responded that Tim Johnson was present during the incident. Johnson's deposition evidenced he was present during the incident but that he was not an employee of the School District. He was an employee of the BIA and was performing lunchroom supervisory respon-

sibilities in that capacity. The evidence does not support that School District employees participated in the lunchroom supervision plan, nor does it support the Azures' assertion of direct control in the lunchroom at the time of the incident through Johnson's presence or actions.

[¶ 16] The Azures assert the remedial measures established after the incident that allegedly now utilize School District employees somehow permit an inference that the School District was involved with supervisory control over the lunchroom at the time of the incident. The evidence in the record does not support that assertion. Again, the record does not contain facts or support an inference evidencing the School District had a responsibility to provide, manage, or participate in the operational control of the lunchroom or the lunchroom supervisory plan when Agnes Azure was injured.

[¶ 17] The Azures have failed to raise a genuine issue of fact establishing a relationship between Agnes Azure and the School District that imposed a legal obligation on the School District to provide a safe environment for Agnes Azure in the Middle School lunchroom. Because the Azures have failed to show the School District ever owed a duty to Agnes Azure, we need not decide whether the School District's duty was non-delegable. Viewing the evidence and all reasonable inferences to be drawn in a light most favorable to the Azures, we conclude no triable issues of fact exist.

## IV

[¶ 18] The Azures also argue the School District breached its duty of care. Because we have determined the School District did not owe Agnes Azure a duty of care, we do not reach this issue.

## V

[¶ 19] Whether the School District had a duty to provide a safe environment in the Middle School lunchroom for Agnes Azure is a question of law. After reviewing the facts in a light most favorable to the Azures, we conclude the Azures have not presented facts or drawn reasonable inferences from the undisputed facts that would allow a fact finder to reasonably find that the School District had a duty to protect Agnes Azure from injury in the lunchroom.

[¶ 20] The Azures failed to raise a genuine issue of material fact precluding summary judgment; therefore, we affirm the district court's grant of summary judgment in favor of the School District.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.