2010 ND 95

Corey BOTNER, individually and as the father and natural guardian of D.B., a minor, Plaintiff and Appellant

v.

BISMARCK PARKS AND RECREATION DISTRICT, Defendant, Third–Party Plaintiff and Appellee

v.

Child, Inc., d/b/a Early Childhood Learning Center, Third–Party Defendant.

No. 20090337.

Supreme Court of North Dakota.

May 18, 2010.

David S. Maring (argued) and Anthony J. Weiler (on brief), Bismarck, ND, for plaintiff and appellant Corey Botner.

Randall J. Bakke (argued) and David R. Phillips (on brief), Bismarck, ND, for defendant, third-party plaintiff and appellee Bismarck Parks and Recreation District.

KAPSNER, Justice.

[¶ 1] Corey Botner appeals from a district court's summary judgment dismissing his claim against Bismarck Parks and Recreation District (Bismarck Parks). We hold the district court erroneously granted summary judgment because Botner produced sufficient evidence to create genuine issues of material fact regarding whether Bismarck Parks breached its duties to maintain its property in a reasonably safe condition and to provide adequate supervision. Therefore, we reverse the district court's summary judgment and remand the case for further proceedings consistent with this opinion.

I.

[¶ 2] In July 2006, Botner's five-year-old son, D.B., went to Hillside Pool on a field trip with his daycare provider, Early Childhood Learning Center (ECLC). D.B. suffered serious injuries when he fell from the high diving board. D.B. began to run on the diving board, stumbled, and fell onto the concrete below. Botner sued Bismarck Parks, which owns and operates Hillside Pool. Botner claimed Bismarck Parks committed actionable negligence by failing to: provide safe equipment, properly supervise diving board users, or warn users of the dangers associated with the high diving board. Botner claimed Bismarck Parks' negligence was the proximate cause of D.B.'s injuries. In its answer, Bismarck Parks admitted D.B. fell from the high diving board, but denied any negligence or liability. Thereafter, Bismarck Parks filed a third-party complaint against ECLC, claiming it negligently supervised D.B. Bismarck Parks also filed a motion for summary judgment, arguing (1) Botner failed to produce sufficient evidence to establish it acted negligently; (2) Botner's claims were barred by the doctrine of discretionary immunity under N.D.C.C. § 32–12.1–03; and (3) the dangers posed by the high diving board were open and obvious.

[¶ 3] The district court granted Bismarck Parks' motion on the first ground, concluding Botner failed to produce sufficient evidence to create material issues of fact regarding whether Bismarck Parks committed actionable negligence. While the district court stated "Bismarck Parks had a duty to maintain its property in a reasonably safe condition," the court found "there is no evidence to suggest that Bismarck Parks did not take reasonable

measures to prevent injuries. Indeed, the diving board was in use for over 50 years before any major injuries occurred." In addition, the district court found "there is no evidence to suggest that the diving board was not reasonably safe" because none of the persons deposed by either party "has any knowledge about whether modifications were needed to make the diving board reasonably safe." The district court also found there was no issue of material fact regarding whether Bismarck Parks should have modified the high diving board's guardrails because "[t]here is no evidence to suggest that the guardrails were not adequate or that the guardrails presented any foreseeable danger."

[¶ 4] In addition, the district court stated Bismarck Parks had a duty to adequately supervise swimmers and properly train lifeguards. However, the district court found "there is not an issue of material fact regarding whether any lifeguard had a duty to stop [D.B.] from running prior to the time that he would have jumped off the diving board." The district court based this finding upon the testimony of lifeguard Rachel Wiche, who was watching the high diving board when D.B. fell off, as well as another lifeguard on duty the day of the accident. Both testified their practice was to warn persons who ran on the diving board after they jumped and surfaced, not while they were running. The district court inferred from the lifeguards' testimony "that it is safer to let a person jump off the diving board once that person starts running on the diving board; blowing the whistle during the run could cause a distraction which could result in a fall."

[¶ 5] The district court also found "there is not an issue of material fact as to whether the lifeguards had any reason to know that [D.B.] was going to use the high diving board in an improper way or that

[D.B.] was not capable of using the high diving board." In support, the district court noted:

[T]he lifeguards previously tested [D.B.] to make sure that he could use the high diving board. [D.B.] passed that test. Once [D.B.] passed the test, he used the high diving board numerous times, including in front of his mother. Between the time that [D.B.] passed the test and the time of [D.B.'s] accident, nobody ever witnessed [D.B.] running on the high diving board.

Based upon these findings, the district court concluded Botner failed to produce evidence demonstrating Bismarck Parks failed to adequately supervise D.B.'s use of the high diving board.

[¶ 6] Because the district court granted summary judgment on the basis of Botner's failure to produce evidence establishing Bismarck Parks committed actionable negligence, the district court did not address whether Bismarck Parks has discretionary immunity or whether the dangers associated with the high diving board were open and obvious. Botner now appeals.

II.

[¶ 7] Botner argues this Court should overturn the district court's summary judgment because he produced sufficient evidence to create material issues of fact regarding whether Bismarck Parks committed actionable negligence by failing to have the high diving board's guardrails extend to the edge of the pool or failing to properly supervise D.B. We agree.

[¶ 8] In *Farmers Union Mut. Ins. Co. v. Associated Elec. & Gas Ins. Servs. Ltd.,* 2007 ND 135, ¶ 7, 737 N.W.2d 253, this Court explained its review of a district court's decision to grant summary judgment under N.D.R.Civ.P. 56:

The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hasper v. Center Mut. Ins. Co.*, 2006 ND 220, ¶ 5, 723 N.W.2d 409. In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record. *Id.* On appeal, we decide "whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law." *Id.* Whether the district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Ernst v. Acuity*, 2005 ND 179, ¶ 7, 704 N.W.2d 869.

"Negligence actions are ordinarily inappropriate for summary judgment because they involve issues of fact." *Groleau v. Bjornson Oil Co., Inc.*, 2004 ND 55, ¶ 6, 676 N.W.2d 763. *See also Barsness v. Gen. Diesel & Equip. Co., Inc.*, 383 N.W.2d 840, 844 (N.D.1986) ("[I]f there is any doubt as to the existence of a genuine issue of material fact, or if differing inferences can be drawn from the undisputed evidence, there is a jury question and summary judgment is improper where questions of negligence are in issue.").

██ [¶ 9] "Under premises liability law, landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk." *Groleau*, 2004 ND 55, ¶ 16,

676 N.W.2d 763 (citing *Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 8, 673 N.W.2d 257; *Doan v. City of Bismarck*, 2001 ND 152, ¶ 13, 632 N.W.2d 815; *Sternberger v. City of Williston*, 556 N.W.2d 288, 290 (N.D.1996)). The duty to maintain property in a reasonably safe condition applies to government entities operating public swimming facilities. *See* 57 Am.Jur.2d *Municipal, County, School, and State Tort Liability* § 280 (2010) ("[T]he courts generally have recognized that government operators of swimming facilities are bound to use ordinary, due, or reasonable care for the safety of the invitees....").

██ [¶ 10] In *Azure v. Belcourt Pub. Sch. Dist.*, 2004 ND 128, ¶ 9, 681 N.W.2d 816 (citations and quotations omitted), this Court explained the general laws applicable to negligence claims:

An actionable negligence consists of a duty on the part of an allegedly negligent party to protect the plaintiff from injury, a failure to discharge that duty, and a resulting injury proximately caused by the breach of the duty. To establish an actionable negligence, the plaintiff must show the defendant had a duty to protect the plaintiff from injury. Generally, the existence of a duty is a preliminary question of law for the court to decide. When a duty does not exist, there is no negligence. If determining the existence of a duty depends on resolving factual issues, the facts must be resolved by the trier of fact. However, issues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts.

"Whether a breach of a duty is the proximate cause of an injury depends on the facts and circumstances of each case...." *Rued Ins., Inc. v. Blackburn, Nickels & Smith, Inc.*, 543 N.W.2d 770, 773 (N.D. 1996). "To warrant a finding that a person's conduct is the proximate cause of an

injury, the injury must be the natural and probable result of the conduct and must have been foreseen or reasonably anticipated by that person as a probable result of the conduct." *Kimball v. Landeis*, 2002 ND 162, ¶ 7, 652 N.W.2d 330.

[¶ 11] The district court correctly recognized Bismarck Parks had a duty to maintain Hillside Pool, including the high diving board, in a reasonably safe condition. *Groleau*, 2004 ND 55, ¶ 16, 676 N.W.2d 763. *See also* Thomas R. Trenkner, *Liability of Swimming Facility Operator for Injury or Death Allegedly Resulting from Defects of Diving Board, Slide, or Other Swimming Pool Equipment*, 85 A.L.R.3d 849, § 2 (1978) ("[I]t has been frequently recognized that operators of swimming facilities are bound to use ordinary, due, or reasonable care to maintain the facility. . . ."). However, the district court erroneously found Botner failed to produce sufficient evidence to create material issues of fact about whether Bismarck Parks fulfilled this duty. In opposing Bismarck Parks' summary judgment motion, Botner submitted a photograph of the high diving board, which shows the guardrails did not extend to the edge of the pool, as well as a copy of an advertisement for a modern high diving board tower, which specifically included "side frames which . . . extend to pool face." Botner also submitted the deposition testimony of James Peluso, Bismarck Parks' facilities manager, who stated the high diving board was approximately ten feet above the pool. Bismarck Parks produced evidence establishing the high diving board had been used since 1953 without a major injury. Bismarck Parks argued this long-standing use demonstrates its premises were reasonably safe, and it had no reason to modify the high diving board's guardrails.

[¶ 12] While evidence of the diving board tower's long-standing, injury-free use is relevant to whether Bismarck Parks maintained its property in a reasonably safe condition, it does not conclusively prove Bismarck Parks met its duty of care. "[I]rrespective of a long history free from accidents," the likelihood of injury is determined at the time an accident occurs. *Henricksen v. State*, 319 Mont. 307, 84 P.3d 38, 46 (2004). In addition, the likelihood of injury is just one of several considerations used to determine whether Bismarck Parks acted reasonably under the circumstances. *See Groleau*, 2004 ND 55, ¶ 16, 676 N.W.2d 763 ("Under premises liability law, landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.").

[¶ 13] When viewing all the evidence in the light most favorable to Botner, and making all reasonable inferences in his favor, we hold the district court erred by granting summary judgment on this issue. Botner produced sufficient evidence to create a material issue of fact regarding whether Bismarck Parks breached its duty to maintain its property in a reasonably safe condition.

[¶ 14] Furthermore, we hold the district court erred by granting summary judgment on Botner's claim that Bismarck Parks breached its duty to adequately supervise D.B. The district court correctly determined Bismarck Parks had a general duty to supervise swimmers at Hillside Pool. *See* 62A Am.Jur.2d *Premises Liability* § 630 (2010) (recognizing public swimming pool owners owe a duty "to exercise reasonable care to maintain the safety of the pool by providing adequate supervision"). However, the district court erred when it determined Botner failed to produce sufficient evidence to create material

issues of fact regarding whether Bismarck Parks breached this duty, and Bismarck Parks was entitled to judgment as a matter of law.

[¶ 15] Botner produced the deposition testimony of Wiche, the lifeguard watching the high diving board when D.B. fell. Wiche testified she first noticed D.B. when he was already on top of the diving board. Wiche stated she saw D.B. begin to run, stumble, and fall off the side of the diving board onto the concrete below. She testified Bismarck Parks had a rule prohibiting running on the diving boards. When D.B. began to run, Wiche stated she did not blow her whistle or otherwise direct him to stop. Wiche testified she intended to warn D.B. after he jumped and surfaced. In addition, Wiche testified Bismarck Parks had a rule that "[y]ou have to be able to swim to use the [diving] board." However, Wiche stated "[t]here wasn't any test given. If there was a child up [on the diving board] that I thought looked hesitant to use the board, I would ask them if they're sure they can swim in the deep water. And if not, they should not go off." Specifically, Wiche testified she did not personally test D.B.'s swimming abilities or question D.B. before he used the high diving board. Although D.B.'s mother testified a Bismarck Parks lifeguard tested D.B.'s swimming abilities the prior summer, none of the lifeguards on duty the day of the accident testified they were aware of that fact, or that D.B. had previously used the high diving board.

[¶ 16] Botner also produced deposition testimony from other Bismarck Parks' employees regarding its general supervision practices. Several lifeguards testified Bismarck Parks required a person be able to swim before using the high diving board, though the lifeguards provided conflicting testimony about whether or how often swimmers' abilities were actually tested prior to such use. The lifeguards also testified Bismarck Parks did not have written regulations explaining who could use the high diving board. Peluso testified Bismarck Parks' lifeguards were "at their own discretion as to who they test [for swimming ability prior to allowing diving board use] and how they test and what they're comfortable with."

[¶ 17] In addition, Botner submitted evidence about Bismarck Parks' practices regarding the ratio of adults-to-children allowed to enter Hillside Pool. Peluso testified Bismarck Parks generally prohibited one adult from bringing more than six children younger than six years old to the pool at one time. Peluso stated Bismarck Parks published this rule in its biannual brochures and orally communicated the rule to groups visiting the pool. The lifeguards gave varying testimony as to how frequently, if ever, Bismarck Parks enforced this rule. The ECLC daycare provider who took D.B. to Hillside Pool on the day of the accident testified she individually brought between six and twelve children to the pool that day. The daycare provider stated she did not recall the exact ages of the children, though she believed four were three years old, another was seven years old, and D.B. was five years old. The daycare provider testified she was unaware of any rule requiring one adult for every six children under the age of six years.

[¶ 18] In support of its motion for summary judgment, Bismarck Parks produced the lifeguards' testimony about warning persons who run on the diving boards after they have already jumped and surfaced. Bismarck Parks also produced the deposition testimony of D.B.'s mother. She testified she watched D.B. use the high diving board at Hillside Pool the summer before the accident. Before D.B. used the high diving board in her presence, D.B.'s moth-

er stated a Bismarck Parks lifeguard tested his swimming abilities. She also testified D.B. was a good swimmer for his age. In granting summary judgment on Botner's supervision claim, the district court stated the lifeguards' testimony supported an inference that, once a person begins to run on the diving board, it is safer to let that person jump than to blow a whistle or otherwise direct them to stop. The district court also found Bismarck Parks was entitled to summary judgment on this issue because a lifeguard had tested D.B.'s swimming abilities the prior summer, and D.B. had previously used the high diving board without incident.

[¶ 19]  Viewing all of the evidence in the light most favorable to Botner, and making all reasonable inferences in his favor, Botner produced sufficient evidence to create material issues of fact regarding whether Bismarck Parks breached its duty to provide adequate supervision. Although many facts favor Bismarck Parks, the district court erred by concluding Bismarck Parks was entitled to judgment as a matter of law. As Botner's claim relates to Bismarck Parks' supervision, D.B.'s swimming abilities are only relevant to the extent Bismarck Parks generally regulated use of the high diving board based upon a person's ability to swim. Therefore, the district court erred by concluding Bismarck Parks was entitled to judgment as a matter of law based in part upon D.B. being able to swim. With regard to the remaining evidence, reasonable persons could disagree about whether Bismarck Parks breached its duty of supervision, and it therefore remains an issue of fact. *See Groleau,* 2004 ND 55, ¶ 6, 676 N.W.2d

763 (stating issues of fact become issues of law only if reasonable persons could reach one conclusion from the facts). We hold the district court erroneously granted summary judgment on this issue. This case raises numerous issues of fact that are best left for a jury to decide. *See id.* ("Negligence actions are ordinarily inappropriate for summary judgment because they involve issues of fact.").

## III.

[¶ 20]  We hold the district court erroneously granted summary judgment because Botner produced sufficient evidence to create genuine issues of material fact regarding whether Bismarck Parks breached its duties to maintain its property in a reasonably safe condition and to provide adequate supervision. Therefore, we reverse the district court's summary judgment and remand the case for further proceedings consistent with this opinion.

[¶ 21] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, J., WILLIAM F. HODNY, S.J., and ALLAN L. SCHMALENBERGER, S.J., concur.

[¶ 22] The Honorable WILLIAM F. HODNY, S.J., and the Honorable ALLAN L. SCHMALENBERGER, S.J., sitting in place of MARING, J., and SANDSTROM, J., disqualified.