2015 ND 202

**Neal and Bonnie MESSER, Plaintiffs and Appellants**

v.

**B & B HOT OIL SERVICE, INC. and JB's Welding, Defendants.**

**JB's Welding, Appellee.**

**No. 20150065.**

Supreme Court of North Dakota.

Aug. 17, 2015.

Randall J. Bakke (argued) and Shawn A. Grinolds (on brief), Bismarck, ND, for plaintiffs and appellants.

Lawrence E. King, Bismarck, ND, for defendant and appellee JB's Welding.

VANDE WALLE, Chief Justice.

[¶ 1] Neal and Bonnie Messer appealed from a district court judgment and order granting defendants summary judgment and dismissing their claims under theories of strict products liability and negligence against JB's Welding. We reverse and remand.

I

[¶ 2] The Messers owned a building located in close proximity to a building owned by Steve Forster and Daniel Krebs. An explosion occurred in the Forster/Krebs building and subsequently damaged the Messers' building. B & B Hot Oil Service, Inc. held a lease on the west half of the Forster/Krebs building. B & B stored two hot oil trucks inside the building. The trucks were a 2005 vehicle designed and manufactured by Energy Fabrication, and a 2009 vehicle referred to as the "knockoff" truck jointly constructed by B & B and JB's Welding through reverse engineering of an EnerFab vehicle.

[¶ 3] The deposition testimony was that a hot oil truck holds various chemicals to flush and clean oil wells and lines, including propane. An investigation into the explosion determined both trucks were storing propane at the time of the explosion, and the source of the explosion allegedly started in the B & B leased space. The EnerFab truck's propane levels were found to be near capacity while the reverse engineered truck's propane levels were significantly lower. The investigation also indicated that the explosion was a result of a propane leak from the reverse engineered truck.

[¶ 4] The Messers filed claims against both B & B and JB as a result of the explosion. The Messers claim JB is liable for damage to their building under both theories of strict products liability as a manufacturer of the reverse engineered truck and negligence in construction of the truck. They alleged that the EnerFab vehicle design includes an electronic failsafe control valve for the propane storage which acts as a shutoff safety feature in case manual control valves fail to close or leak, and the reverse engineered truck did not include a failsafe control valve. They further allege JB was responsible for installation of prefabricated propane lines as well as "fireboxes" or "burner boxes" used to heat the hot oil contained in the vehicle.

[¶ 5] JB moved for summary judgment and dismissal of the claims. At the hearing, the Messers presented the affidavit of an expert witness who stated that an "LP gas system to shut the gas off in the event of a leak ... should have been addressed and designed into the system in conjunction with the firebox assembly." The affidavit further asserted that the failure to install

an electronic failsafe shutoff control valve rendered the truck unreasonably dangerous when it was accepted by B & B, and JB was negligent in failing to design and manufacture the firebox assembly with that control valve. Additional depositions asserted B & B was responsible for the installation of the propane system including safety switches to stop the flow of propane, and JB did not manufacture, design, or assemble those portions of the truck and had no involvement in the design or installation of the propane system.

[¶ 6] The district court granted the motion, concluding under the theory of strict products liability that JB did not jointly design or manufacture the truck with B & B, was not in the business of selling hot oil trucks, did not provide the truck to B & B in the same condition in which it was sold because it was subsequently changed by B & B, and no evidence was presented that the truck was defective after it left JB's control. The negligence claim was dismissed because JB was found to have no duty to install an electronic safety shutoff, and its actions were not the proximate cause of the harm suffered. In its order, the court stated, "[i]t is very important to not isolate single comments made by any particular deponent and attempt to mischaracterize what is being said. It is more enlightening to be able to read the pages before and after the comments to take the items in context." The court found that JB only welded the shell of the truck including the firebox and propane lines, and had nothing to do with the propane system, valves, or decision to install automatic shutoffs.

## II

[¶ 7] "Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law." *Miller v. Diamond Resources, Inc.*, 2005 ND 150, ¶ 8, 703 N.W.2d 316. "Whether the trial court properly granted summary judgment is a question of law that [this Court reviews] de novo on the entire record." *Id.* "[T]his Court decides whether the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law." *Id.* "In determining whether summary judgment is appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences that can reasonably be drawn from the evidence." *Id.* "Negligence and proximate cause are fact questions unless the evidence is such that reasonable minds can draw but one conclusion, and negligence actions are generally not appropriate for summary judgment." *Id.* "Although negligence actions are ordinarily inappropriate for summary judgment, one of the elements of the tort of negligence is the existence of a duty on the part of the alleged tortfeasor, and whether a duty exists is generally a preliminary question of law for the court." *Crowston v. Goodyear Tire & Rubber Co.*, 521 N.W.2d 401, 406 (N.D.1994) (citation omitted).

## III

[¶ 8] The district court found it was undisputed that JB and B & B did not jointly design or manufacture the trucks, JB was not in the business of manufacturing hot oil trucks, the trucks did not reach the end user without substantial changes in its condition, and no evidence of a defect was presented.

In order to recover for injuries sustained as a result of a defective condition

in a product, unreasonably dangerous to a consumer, the plaintiff must show by a preponderance of the evidence the product was defective in design or manufacture; the defect rendered the product unreasonably dangerous to the consumer; the defect existed when the product left the manufacturer; and the defect was a proximate cause of the plaintiff's injuries.

*Endresen v. Beretta USA Corp.*, 1997 ND 38, ¶ 8, 560 N.W.2d 225. "Whether 'a manufacturer fits within the parameters of strict liability in tort is essentially a factual question for the trier of fact.' " *Id.* (citing *Stillwell v. Cincinnati Inc.*, 336 N.W.2d 618, 622 (N.D.1983)). *See* North Dakota Products Liability Act, N.D.C.C. ch. 28–01.3.

▆▆▆ [¶ 9] The record shows a factual dispute exists whether JB was a manufacturer under a theory of strict liability. JB participated in the construction of a vehicle without the presence of electronic safety valves, and delivered this alleged defect in the vehicle to the end user in that condition. Evidence was introduced that JB had previously constructed similar vehicles. While it is not disputed that the truck was later altered by B & B, deposition testimony alleged that based on the design of the EnerFab truck the point at which those valves should have been installed was during assembly of the firebox while in JB's control. Under the deferential standard of summary judgment and viewed in a light most favorable to the party opposing the motion, a reasonable factual dispute as to the design and assembly of the truck exists. Because a genuine issue of material fact exists, summary judgment and dismissal of the strict products liability claim was error.

## IV

▆▆▆ [¶ 10] The district court found that JB had no duty to install the electronic shutoff valve or to instruct B & B to install the electronic shutoff valve, and the proximate cause of the Messers' injuries cannot be attributed to JB's alleged failure to install the shutoff valve. "To succeed in a negligence claim, the plaintiff must prove that the defendant owed a duty to the plaintiff, the defendant breached that duty, and the plaintiff has suffered an injury that was proximately caused by the defendant's negligence." *Beckler v. Bismarck Public School Dist.*, 2006 ND 58, ¶ 8, 711 N.W.2d 172. For claims based on defective products, "[n]egligence focuses on whether or not the conduct of the manufacturer or seller falls below the standard of reasonable care." *Oanes v. Westgo, Inc.*, 476 N.W.2d 248, 253 (N.D.1991). "In negligent design claims it is well established that a manufacturer or seller is not liable in the absence of proof that a product is defective." *Id.* A manufacturer of a product "owes a duty of care toward a user, although there is no privity of contract between them, where the article is inherently dangerous or where it is reasonably certain, if negligently designed or manufactured, to place life and limb in peril." *Lindenberg v. Folson*, 138 N.W.2d 573, 582 (N.D.1965). "One who has been injured by a product may seek to hold the manufacturer or seller liable on the theory that the design of the product made it dangerous and, apart from whether it was negligent so to design it, negligence inhered in a failure to warn of the danger." *Id.* at 582–83. Thus, even though the manufacturer may be found not to be negligent in the design of the product, the manufacturer may be found negligent for failure to warn if the product is dangerous. "[I]f the existence of a duty depends upon factual determinations, their resolution is for the trier of fact. The appropriate procedure in such cases is for the court to instruct the jury as to the defendant's

duty, or absence of duty, if certain facts are found." *Butz v. Werner*, 438 N.W.2d 509, 511 (N.D.1989).

[¶ 11] The trial court, after parsing the deposition testimony and what it found to be undisputed facts, concluded that "it appears as though the products liability act for the State of North Dakota does not apply to this particular situation and to JB's Welding" and, with respect to the claim for negligence, concluded that "Messers have failed to establish a duty, breach, and proximate cause in this case." However, as we discuss above, the deposition testimony and undisputed facts and the inferences which a trier of fact might draw therefrom lead us to conclude reasonable issues of material fact exist as to JB's status as a manufacturer of the truck, and whether JB's alleged failure to install the electronic shutoff valves was the proximate cause of the Messers' injuries. Because this status is undetermined, whether JB holds a duty to exercise reasonable care in the design or manufacture of the truck, or holds a duty to warn of the inherit danger of the vehicle, depends on factual determinations to be decided by a trier of fact. The appropriate procedure is to instruct the jury to find the status of JB before determining whether a duty, if any, was owed by JB to the Messers.

## V

[¶ 12] We reverse the district court's order and remand for further proceedings consistent with this opinion.

[¶ 13] DALE V. SANDSTROM, DANIEL J. CROTHERS, CAROL RONNING KAPSNER and LISA FAIR McEVERS, JJ., concur.