2016 ND 17

Deborah J. PALMER, surviving spouse
of Gary J. Palmer, deceased,
Plaintiff and Appellant

v.

999 QUEBEC, INC. (f/k/a International
Boiler Works Company), a Delaware
corporation; A.H. Bennett Company,
a Minnesota corporation; A.L. Crump
and Company, Inc., an Illinois corpo-
ration; A.O. Smith Corporation, a De-
laware corporation; A.W. Chesterton
Company, a Massachusetts corpora-
tion; A.W. Kuettel & Sons, Inc., a
Minnesota corporation; Advocate As-
bestos Mines, Ltd., a Canadian Corpo-
ration, Airco, Inc., a Delaware corpo-
ration; American Biltrite, Inc., Amer-
ican Standard, Inc., a Delaware corpo-
ration; Anchor Packing Company, a
Delaware corporation; Apollo Piping
& Supply, an Illinois corporation; As-
bestos Corporation, Ltd., a Canadian
corporation; Atlas Turner, Inc., a Ca-
nadian corporation; Australian Blue
Asbestos, Pty., an Australian corpora-
tion; Bayer Cropscience, Inc., (succes-
sor to Rhone–Poulence, Inc., f/k/a
Amchem Products, Inc., f/k/a Benja-
min Foster Company, a New York
Corporation); Beazer East, Inc., f/k/a
Koppers Industries, Inc.; Beazer East,
individually and as successor in the
interest to THEIM and as successor
in interest to Universal Refractories;
Bell & Gossett a foreign corporation;
Bell Asbestos Mines, Ltd., a Canadian
corporation; Bondex International,
Inc., a wholly owned subsidiary of
Bondex Company, an Ohio corpora-
tion; Border States Industries, Inc., a
North Dakota corporation; Bryan
Steam Corporation, an Indiana corpo-
ration; Building Sprinkler's Compa-
ny, Inc., a North Dakota corporation;
Burnham Corporation, a Pennsylva-

nia corporation; CBS Corporation (f/
k/a Westinghouse Electric Corpora-
tion), a Pennsylvania corporation;
Calaveras Asbestos Mines, individual-
ly and as a successor-in-interest to
California Asbestos Company, a Cali-
fornia corporation; California Asbes-
tos Company, a California corpora-
tion; Carborundum Abrasives, Inc., a
Delaware corporation; Carlisle Cor-
poration, a Delaware corporation;
Carol Cable Corporation, a division of
AVNET, Inc., a foreign corporation;
CertainTeed Corporation, a Maryland
corporation; Chevron U.S.A., Inc., a
Pennsylvania corporation; Chicago
Wilcox Manufacturing Company, an
Illinois corporation; Chromalox (a di-
vision of Emerson Electric Co.), a
Missouri corporation; Cleaver
Brooks, Division of Aqua–Chem, Inc.,
a Delaware corporation; Columbia
Bailer Company, a Pennsylvania cor-
poration; Crane Company, a Dela-
ware corporation; Crane Johnson
Company, a North Dakota corpora-
tion; Crane Packing Company, a for-
eign corporation; Crown Cork & Seal
Company, Inc., a Pennsylvania corpo-
ration (individually and as successor-
in-interest) to Mundet Cork Corpora-
tion; CSR, Ltd. (a/k/a Colonial Sugar
Refining Company, Ltd.), an Austra-
lian corporation, individually and as
an alter-ego of Australian Blue Asbes-
tos, Pty.; Dakota Welding Supply, a
North Dakota corporation; Dana Cor-
poration, a Virginia corporation; Del-
tak, L.L.C., a Unit of Jason, Inc., a
Minnesota corporation; Detroit Stok-
er, a Michigan corporation; Domco
Products Texas, L.P., f/k/a Azrock In-
dustries, Inc., a Delaware corporation;
Dossert Corp., a New York corpora-
tion; Draxton Sales, a Minnesota cor-
poration; Durabla Manufacturing
Company, a Pennsylvania corpora-

tion; E.J. Lavino and Company, Inc., a Delaware corporation; Eaton Corporation (individually and as successor-in-interest to Samuel Moore & Company); an Ohio corporation; Egbert Corporation, individually and as success-in-interest to S.K. Wellman Corporation, an Ohio corporation; Electric Supply Corp., an Illinois corporation; Elliott Turbomachinery Company, Inc.; Emerson Electric Co., a Missouri corporation; Ericsson, Inc., (f/k/a Cable Corp.) a Delaware corporation (as successor-in-interest to Anaconda Wire & Cable Company); Excelsior, Inc., an Illinois corporation; Essex Group, Inc., Michigan corporation (individually and as successor-in-interest to Essex International, Inc.); F.R.P. Products, Ltd., a foreign corporation; F & C Supply, Inc., a North Dakota corporation; Fargo–Moorhead Insulation Company, a North Dakota corporation; Firebrick Supply Co., a Minnesota corporation; Fisher Controls International, LLC, f/k/a Fisher Govenor Co., an Iowa corporation; Foseco, Inc., a Delaware corporation; Foster Products Corporation, a Minnesota corporation (as successor-in-interest to Foster Products Division of H.B. Fuller Company and to the Benjamin Foster Division of AmChem Products, Inc.); Foster Wheeler Corporation, a New York corporation; Frommelt Safety Products, a Wisconsin corporation; Fuel Economy Engineering Co., a Minnesota corporation; Gardner Denver Machinery, Inc., (individually and as successor-in-interest to Joy Technologies, Inc. f/k/a Joy Manufacturing Company) a Delaware corporation; General Electric Company, a foreign business corporation organized under the laws of New York; General Engineering Development Corporation, f/k/a Fuel Economy Engineering Company, a South Dakota corporation; General Refractories Company; George T. Walker & Co., Inc., a foreign corporation; Georgia–Pacific Corp., a Georgia corporation; Goodrich Corporation, f/k/a B.F. Goodrich Company, a New York corporation; Goodyear Tire & Rubber Company, an Ohio corporation; Goulds Pumps; Graybar Electric, a New York corporation; Greene, Tweed & Co., a Pennsylvania corporation; Grinnell Corporation, a Minnesota corporation; H.B. Fuller, Co., a Minnesota corporation; H.E. Everson Company, a North Dakota corporation; H.H. Robertson Company, a Pennsylvania corporation; Hedman Mines, Ltd., a Canadian corporation; Hennig Packing & Gasket Corporation, an Illinois corporation; Henry Vogt Machine Company, a Kentucky corporation; Hercules Chemical Company, Inc., a New Jersey corporation; Hickory Insulation Co., a foreign corporation; Hobart Brothers Co., an Ohio corporation; Honeywell, Inc., a Delaware corporation; Houston Specialty Wire & Cable Co., a Delaware corporation; IMO Industries, Inc.; Industrial Contractors, Inc., a North Dakota corporation; Industrial Holdings Corporation, f/k/a The Carborundum Company, a Delaware corporation; Ingersoll–Rand Company, a New Jersey corporation; Illinois Insulation Contracting Company, Inc., (f/k/a Illinois Roofing & Insulation Company), an Illinois corporation; Inductotherm Industries, Inc., a New Jersey corporation; Insulation Services, Inc., a Louisiana corporation; International Vermiculite Co., an Illinois corporation; ITT Corporation; J.H. France Refractories Company, a Pennsylvania corporation; The Jamar Company, a Minne-

sota corporation (individually and as successor-in-interest and liability to the Walker–Jamar Company, a former Minnesota corporation); Jaquays Mining Company, an Arizona corporation; Jerguson Gage & Valve, a foreign corporation; John Crane, Inc., a Delaware corporation (successor-in-interest to John Crane–Houdaille, Inc. and Crane Packing Company); Johnston Boiler Co., a Michigan corporation; J.M. Asbestos Sales, Inc.; J–M Manufacturing Company, Inc.; Kaiser Gypsum Company, a Washington corporation; Kelly–Moore Paint Company, a California corporation; Kelsey–Hayes Group (a division of Varity Corporation), a Delaware corporation; Kewanee Boiler Corporation (n/k/a OakFabCo, Inc.), an Illinois corporation; Lac d' Amiante du Quebec, Ltee. (f/k/a/Lake Asbestos of Quebec), a Canadian corporation; Lamons Metal Gasket Company, a Delaware corp.; Lincoln Electric Co., an Ohio corporation; Lipe–Rollway Corporation, a New York corporation; Lochinvar, a Tennessee corporation; Mandan Electric Supply, a foreign corporation; Marmon Corporation, a Delaware corporation; McMaster Carr Supply Company, an Illinois corporation; McNeil Refractories, Inc., a Pennsylvania corporation; Mellema Company, a Minnesota corporation; Metate Asbestos Mines, an Arizona corporation; Metropolitan Life Insurance Company, a foreign corporation; Mine Safety Appliance Company, a Pennsylvania corporation; Minnesota Mining & Manufacturing, a Delaware corporation; Natkin Group, Inc., as successor to Fuel Economy Engineering Company, a Delaware corporation; Northern Plumbing & Heating, Inc., a North Dakota corporation; Northern Plumbing Supply, Inc., a North Dakota corporation; OakFab-Co, Inc. f/k/a Kewanee Boiler Corporation an Illinois corporation; The Okonite Company, Inc., a New Jersey corporation; Owens–Illinois, Inc., an Ohio corporation; Parker Boiler Co., a California corporation; Paul A. Douden, a Colorado corporation; Paul W. Abbott Company, Inc., a foreign corporation; Pfizer, Inc., a Delaware corporation; Phelps Dodge Industries, a New York corporation; Pipe, Valve & Fittings, Co., a Colorado corporation; Power Process Equipment, Inc., a Minnesota corporation; Praxair Distribution, Inc., a foreign corporation; Quin–T Corporation, a Delaware corporation; Rapid–American Corporation, a Delaware corporation; Research Cottrell, Inc., a New Jersey corporation; Rhone–Poulenc, Inc., a New York corporation (as successor-in-interest to Benjamin Foster, a division of AmChem Products Company); Riley Power, Inc., f/k/a Riley Stoker Corporation, a Massachusetts corporation; Robinson Insulation, a Montana corporation; Rockbestos–Surprenant Cable Corp. (f/k/a The Rockbestos Company) a Delaware corporation (a wholly owned subsidiary Marmon Corporation); Rockwell International Corporation, a Nevada corporation; Rome Cable Corp., a Delaware corporation, (a subsidiary of Rome Group, Inc.); Roughrider Supply, a foreign corporation; RPM, Inc., an Ohio corporation; Ryall Electric Supply, Inc., a Colorado corporation; S.O.S. Products Company, Inc., a New York corporation; Saint–Gobain Abrasives, Inc. f/k/a Norton Company individually and as successor by merger with Carborundum Abrasives Company, a Massachusetts corporation; SEPCO Corporation, an Alabama corporation; Singer Safety Company, an

Illinois corporation; Smith–Sharpe Company, a Minnesota corporation; Sprinkman Sons Corporation, an Illinois corporation; Sternmerich Supply Co., a Missouri corporation; Superior Boiler Works, Inc., a Kansas corporation; Sussman Electric Boilers, a New York corporation; Square D, a brand of Schneider Electric; 3M; Thermo Electric Co., a New Jersey corporation; The Trane Co., a New York corporation, (a division of American Standard, Inc.); U.S. Filter Co., a foreign corporation; Union Boiler Co., a Delaware corporation; Union Carbide Corporation, a Delaware corporation; Uniroyal, Inc., a New Jersey corporation; United Conveyor Corporation, an Illinois corporation; Victor H. Leeby Company, a North Dakota corporation; Walker Jamar Company, A Minnesota corporation; Warren Pumps, LLC f/k/a Warren Pumps, Inc.; Weil McLain Company, a Delaware corporation; Western Steel & Plumbing, Inc., a North Dakota corporation; Whittier Filtration, Inc. f/k/a U.S. Filter/Whitter, Inc., a subsidiary of Water Applications & Systems Corporation, a Delaware corporation; Yarway Corporation; Zurn Industries, Inc., a Pennsylvania corporation, Defendants.

A.W. Kuettel & Sons, Inc., a Minnesota corporation, Appellee.

No. 20150031.

Supreme Court of North Dakota.

Jan. 14, 2016.

David C. Thompson, Grand Forks, N.D., for plaintiff and appellant.

Thomas M. Stieber (argued), Jason T. Mohr (appeared), Kyle B. Mansfield (on brief), and Joanna M. Salmen (on brief), Minneapolis, MN, for appellee.

CROTHERS, Justice.

[¶ 1] Deborah J. Palmer, surviving spouse of Gary J. Palmer, appeals from a summary judgment dismissing Palmer's negligence claim against A.W. Kuettel & Sons, Inc. We affirm, concluding Palmer has failed to raise a genuine issue of material fact to preclude summary judgment.

I

[¶ 2] Gary Palmer was born in 1955 and grew up in Duluth, Minnesota. He was diagnosed with mesothelioma, a form of cancer, in 2011, and died in March 2015. Kuettel supplied and installed asbestos-containing insulation products while performing industrial and commercial insulation contracting work. Palmer's deceased father worked for Kuettel from 1961 through 1965 and 1974 through 1979. Most of Kuettel's jobs were in Minnesota, however, in the 1960s; Kuettel supplied and installed insulation products at the Grand Forks Air Force Base.

[¶ 3] In 2013 Palmer sued numerous defendants, including Kuettel, alleging Kuettel's negligence caused his mesothelioma. Palmer alleged he contracted mesothelioma from childhood exposure to asbestos fibers through contact with his father's dusty work clothes. In his deposition he stated that while in elementary school he came in contact with his father's work clothes when he would hug his father after he arrived home from work. He also stated he played in the vicinity of the laundry area where his mother washed his father's work clothes.

Palmer alleged Kuettel should have warned him or his father of the dangerous nature of asbestos and asbestos-containing products.

[¶ 4] Kuettel moved for summary judgment, arguing it did not owe a duty to warn Palmer about asbestos because no special relationship existed between them. Kuettel also argued it was not liable for any of Palmer's injuries because it did not manufacture any of the asbestos-containing products it supplied and installed. The district court granted Kuettel's motion on both grounds and dismissed Palmer's action against Kuettel.

## II

[¶ 5] Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no disputed issues of material fact or inferences to be drawn from the undisputed facts, or if resolving disputed facts would not alter the results. *Horob v. Farm Credit Services of N.D.,* 2010 ND 6, ¶ 11, 777 N.W.2d 611.

[¶ 6] Our standard of review for summary judgment is well-established:

"The party moving for summary judgment has the burden of establishing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion, and the opposing party will be given the benefit of all favorable inferences that can reasonably be drawn from the record. On appeal, we decide 'whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.' "

*Id.* at ¶ 12 (quoting *Schleuter v. Northern Plains Ins. Co., Inc.,* 2009 ND 171, ¶ 6, 772 N.W.2d 879). Whether a district court properly granted summary judgment is a question of law this Court reviews de novo on the entire record. *Horob,* at ¶ 12.

[¶ 7] We have stated:

"Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

"In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief."

*Iglehart v. Iglehart,* 2003 ND 154, ¶ 10, 670 N.W.2d 343 (quoting *Anderson v. Meyer Broad. Co.,* 2001 ND 125, ¶ 14, 630 N.W.2d 46).

## III

[¶ 8] Palmer argues the district court erred in granting Kuettel summary judgment on his negligence claim. Specifically,

he argues the court erred in concluding Kuettel did not owe a duty of care to Palmer. Palmer argues the court should have focused on foreseeability of injury in its analysis of whether Kuettel owed a duty to Palmer.

[¶ 9] Negligence actions involve issues of fact and generally are inappropriate for summary judgment. *Klimple v. Bahl*, 2007 ND 13, ¶ 5, 727 N.W.2d 256. To succeed in his negligence action Palmer must prove Kuettel owed him a duty of care, Kuettel breached that duty and Palmer suffered an injury that was proximately caused by Kuettel's negligence. *Id.*

[¶ 10] Generally, the existence of a duty is a preliminary question of law for the court. *Messer v. B & B Hot Oil Serv., Inc.*, 2015 ND 202, ¶ 7, 868 N.W.2d 373. "When a duty does not exist, there is no negligence." *Azure v. Belcourt Pub. Sch. Dist.*, 2004 ND 128, ¶ 9, 681 N.W.2d 816. "If determining the existence of a duty depends on resolving factual issues, the facts must be resolved by the trier of fact. However, issues of fact may become issues of law for the court if reasonable persons could reach only one conclusion from the facts." *Saltsman v. Sharp*, 2011 ND 172, ¶ 11, 803 N.W.2d 553 (quoting *Botner v. Bismarck Parks & Recreation Dist.*, 2010 ND 95, ¶ 10, 782 N.W.2d 662).

[¶ 11] Whether a duty of care is owed in a secondary or "take-home" asbestos exposure case is a matter of first impression for this Court. As discussed below, in deciding whether a duty was owed to a plaintiff in a secondary asbestos exposure case, courts have focused on either the foreseeability of the injury or the nature of the relationship between the parties. *See, e.g., In re Certified Question from Fourteenth Dist. Court of Appeals of*

*Texas*, 479 Mich. 498, 740 N.W.2d 206 (2007).

[¶ 12] In support of his argument Palmer cites to numerous cases holding a duty was owed to the plaintiff on the basis of the foreseeability of the plaintiff's injury. *See e.g., Bobo v. Tennessee Valley Auth.*, —— F.Supp.3d ——, 2015 WL 5693609 (N.D.Ala.2015); *Anderson v. A.J. Friedman Supply Co., Inc.*, 416 N.J.Super. 46, 3 A.3d 545 (App.Div.2010); *Arnold v. Saberhagen Holdings, Inc.*, 157 Wash.App. 649, 240 P.3d 162 (2010); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn.2008); *Olivo v. Owens–Illinois, Inc.*, 186 N.J. 394, 895 A.2d 1143 (2006).

[¶ 13] In focusing on foreseeability in the duty analysis, the cases cited by Palmer discussed evidence showing the defendants knew or were aware of the risks of asbestos but failed to take any action or took little action to notify others regarding the harmful effects of asbestos. *Bobo*, —— F.Supp.3d at ——, 2015 WL 5693609 at *18; *Anderson*, 3 A.3d at 555–56; *Arnold*, 240 P.3d at 172–73; *Satterfield*, 266 S.W.3d at 352–53, 367; *Olivo*, 895 A.2d at 1149. Under those authorities, foreseeability of a plaintiff's injury depends upon the employer's knowledge of the risk that employees could carry asbestos home and cause injury to others.

[¶ 14] Here, the district court concluded Kuettel did not owe Palmer a duty because no special relationship existed between Kuettel and Palmer. Similarly, courts in New York, Georgia, Michigan and Delaware have focused on the lack of a relationship between the parties in holding employers and premises owners do not owe a duty to secondary asbestos plaintiffs. *See Riedel v. ICI Americas Inc.*, 968 A.2d 17, 26–27 (Del.2009); *In re Certified Question from Fourteenth Dist. Court of Appeals of Texas*, 740 N.W.2d at 222; *In re New York City Asbestos Litig.*, 5 N.Y.3d

486, 806 N.Y.S.2d 146, 840 N.E.2d 115, 122 (2005); *CSX Transp., Inc. v. Williams,* 278 Ga. 888, 608 S.E.2d 208, 210 (2005).

[¶ 15] This Court's negligence cases have focused on both foreseeability of injury and the relationship of the parties in deciding whether a duty exists. Foreseeability of the plaintiff's injury in the context of whether a defendant owed a duty of care was discussed in *Barsness v. General Diesel & Equip., Co.,* 383 N.W.2d 840, 843 (N.D.1986); *Layman v. Braunschweigische Maschinenbauanstalt, Inc.,* 343 N.W.2d 334, 341 (N.D.1983); *Schleicher v. Western State Bank,* 314 N.W.2d 293, 298 (N.D.1982); and *Kirton v. Williams Elec. Coop., Inc.,* 265 N.W.2d 702, 705 (N.D. 1978). In those cases we held that "foreseeability of the plaintiff's injury is a question of fact for the jury, unless the facts are such that reasonable minds could not differ." *Barsness,* at 843 (citing *Layman,* at 341; *Kirton,* at 705).

[¶ 16] In a more recent case discussing a defendant's duty we stated "[d]uty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Azure v. Belcourt Pub. Sch. Dist.,* 2004 ND 128, ¶ 10, 681 N.W.2d 816 (quoting 57A Am. Jur. 2d. *Negligence* § 81 (1989 & Supp. 2002)).

[¶ 17] Here, regardless of whether the focus is on foreseeability of injury, relationship of the parties or a combination of both, Palmer has not raised any genuine issues of material fact that would preclude summary judgment. The evidence submitted by Palmer fails to establish a special relationship between Kuettel and Palmer or Kuettel's knowledge of the dangers of asbestos while Palmer's father was employed by Kuettel.

[¶ 18] To show Kuettel's knowledge regarding asbestos Palmer submitted a now-repealed 1943 Minnesota worker's compensation statute, Kuettel's answers to interrogatories from a 1996 Burleigh County district court case, and a Minnesota statute passed in 1973 that prohibited the use of powdered asbestos. *See* Minn.Stat. § 325F.01. In its answers to interrogatories Kuettel stated it became aware of the possible hazards associated with asbestos exposure in the early 1970s. Kuettel also stated it believed asbestos was removed from all products it purchased and installed in the early 1970s. The Minnesota statute prohibiting the use of powdered asbestos became effective in 1973, and Palmer's father resumed his employment with Kuettel in 1974. The interrogatory answers and statute are relevant as to Kuettel's knowledge regarding asbestos but Palmer presented no evidence showing Kuettel continued to use asbestos products after his father resumed employment with Kuettel in 1974 when the use of asbestos was prohibited in Minnesota.

[¶ 19] Other evidence submitted by Palmer was his birth certificate listing his father's occupation as an "asbestos worker," excerpts from Palmer's deposition describing how his father always wore his dusty work clothes home and deposition excerpts from a co-worker of Palmer's father who stated he and Palmer's father worked together at the Grand Forks Air Force base in the 1960s and that asbestos is dusty. None of this evidence shows Kuettel had knowledge of the dangers of asbestos while Palmer's father was employed by Kuettel or that a special relationship existed between Kuettel and Palmer.

[¶ 20] Palmer also appears to rely on an expert who testified in a New Jersey asbestos case and claims the expert will testify at trial in this case. *See Anderson,* 3 A.3d at 553. The expert's testimony in *Anderson* was relevant to show Exxon Mo-

bil Corporation's knowledge regarding the hazards of asbestos, but Palmer made no showing the expert will testify that Kuettel knew of the dangers of asbestos while Palmer's father was employed by Kuettel.

▇▇ [¶ 21] This Court is not required to determine why facts may be relevant or material to a party's case. *Iglehart*, 2003 ND 154, ¶ 10, 670 N.W.2d 343. Whether Kuettel owed Palmer a duty of care is a question of law. *Messer*, 2015 ND 202, ¶ 7, 868 N.W.2d 373. A question of law may depend on facts that must be decided by a fact finder, but that is not the case here. *Saltsman*, 2011 ND 172, ¶ 11, 803 N.W.2d 553. We conclude Palmer has presented no evidence in opposition to the motion for summary judgment from which a reasonable person could conclude Kuettel owed a duty of care to Palmer.

IV

[¶ 22] Palmer argues the district court erred in granting Kuettel's motion for summary judgment under the liability of nonmanufacturer statute, N.D.C.C. § 28–01.3–04. Alternatively, Palmer argues Minnesota's nonmanufacturing seller statute should apply in this case. *See* Minn. Stat. § 544.41. Because we conclude Kuettel did not owe a duty of care to Palmer, it is not necessary to address these arguments. We affirm the summary judgment dismissing Palmer's negligence claim against Kuettel.

[¶ 23] GERALD W. VANDE WALLE, C.J., STACY JOAN LOUSER, D.J., LISA FAIR McEVERS and DALE V. SANDSTROM, JJ., concur.

[¶ 24] The Honorable STACY JOAN LOUSER, D.J., sitting in place of KAPSNER, J., disqualified.